BUSH *et al.* v. BUSH, *Appellant.*

1. **Partnership**: ESTOPPEL. A party to a partnership agreement who derives benefits from the partnership, and while so doing recognizes its existence, is estopped from afterwards denying it.

2. ———— : SUBSEQUENT AGREEMENT. Where several persons enter into a written agreement to form a general partnership with the understanding that a subsequent agreement should be signed more particularly specifying the terms of the partnership, the partnership will not be dissolved by the failure of one of the parties to sign the latter paper, unless he so intended and the others so accepted his refusal to do so.

3. ———— : INTENTION OF PARTIES. The existence of a partnership often depends upon the intention of the parties. This is always the case as between the parties themselves.

*Appeal from Callaway Circuit Court.*—HON. G. H. BURCKHARTT, Judge.

AFFIRMED.

*Crews & Thurmond* for appellant.

(1) A contract that is to be put into writing and signed by all the parties thereto, and which, it is understood by the parties, is not to be deemed complete until signed by all the parties, is not binding on any, until

signed by all. Bishop on Contracts, sec. 171; *Methudy v. Ross*, 10 Mo. App. 101, affirmed in 81 Mo. 481; *Eads v. Carondelet*, 42 Mo. 113; *Butler v. Smith*, 35 Miss. 457; Addison on Contracts [3 Am. Ed.] sec. 20, page 37; Parsons on Contracts [5 Ed.] 475; 1 Story on Cont., sec. 378. (2) To constitute a partnership there must be an agreement between the parties, and there must be an entering upon, or conducting some business, under such agreement, or some business preparatory thereto, to make them liable to third parties. *Lucas v. Cole*, 57 Mo. 143; Story on Part. [6 Ed.] secs. 3, 6. (3) A partnership pre-supposes mutual confidence between the parties, a community of the property of the partnership, as soon as it becomes a part of the common property. Each partner has a right to the possession of all the property. Story on Part. [6 Ed.] secs. 6, 16. (4) Partnership is a contract founded upon the consent of the parties thereto, and must be for a lawful purpose and object. And, if the contract be founded in fraud or imposition, either upon one of the parties, or upon third persons, it is utterly void. Story on Part. [6 Ed.] sec. 6; 1 Parsons on Cont. [5 Ed.] sec. 5, p. 155. (5) The partnership contemplated by the contract sued on, was based upon the use of Jordan Bush's property, and was intended, by the parties, as a means of collecting claims against him for their services, and to appropriate his property to their use and benefit; consequently it was contrary to the policy of the law, and to public policy, and was void. Bishop on Cont. [Ed. 1878] secs. 456 to 461 inclusive, and authorities cited; 2 Kent's Commentaries, 466; Pollock on Cont. 251; *Downing v. Ringer*, 7 Mo. 585; Parsons on Cont. [5 Ed.] 155 and 156; *Koehler v. Feuerbacher*, 2 Mo. App. 11. (6) The contract sued on fixes the time of the partnership for the life of all the members thereof, unless by consent of all it be sooner dissolved. If the partnership ever existed it could only be dissolved according to the terms of the

article of agreement, and unless all the parties consented to the dissolution, the alleged partnership could be dissolved only by the death of one of the members or by decree of a court of equity. Story on Part. [6 Ed.] chap. 13, secs. 275, 282. (7) On dissolution the assets of a partnership should be distributed according to the terms of the agreement, unless the terms have not been complied with ; and if the partnership is for the life of all the members, and assets to be divided equally on a dissolution, before the death of any member, the assets should be divided upon an equitable basis, in proportion to amount put in by each. (8) The acts and statements of one, claiming to be a partner, are not admissible to prove the partnership as against the other. *Campbell v. Dent*, 54 Mo. 325.

*Smith & Krauthoff* and *D. P. Bailey* for respondents.

(1) Persons are partners in regard to each other if each of them contributes either capital, money, merchandise, chattels, or choses in action, or credit or skill and care, or two or more, or all of these and all the contributions are put together into a common stock to be used for the purpose of carrying on business for the common benefit. Parsons on Part., 54 ; 2 Greenl. on Evid., sec. 481. Anything of value for the use of partnership is a sufficient contribution to the joint fund. The property itself need not be put in the common stock ; on the other hand, the capital of the firm may consist of the mere use of property owned by the individual partners separately. *Champion v. Bestwick*, 18 Wend. 183 ; *Fremont v. Copeland*, 2 Bing. 170 ; *Cobb v. Abbott*, 14 Pick. 289 ; *Waland v. Elkins*, 1 Stark. 307 ; *Cotton v. Betten*, 1 Bosw. 490 ; *French v. Stying*, 2 C. B. (N. S.) 357. Herndon Bush took the contract into his possession, and though he did not sign it, he directed his

brothers to proceed with the partnership business as though he had signed it. He participated in and directed the business. The case is within the doctrine of estoppel *in pais.* Story's Eq. Juris., sec. 1546 ; *Pickard v. Sears,* 6 A. & E. 469 ; 2 Parsons on Cont., 792, 793, 794 ; *Gregg v. Wells,* 10 A. & E. 90 ; *Down v. Cooper,* 2 Q. B. 256. When any one has induced another to accept a particular hypothesis, he shall not afterwards, to the injury of that other, contradict that hypothesis. *Yewdell v. McLaughlin,* 30 Mo. 28 ; *Taylor v. Saugrain,* 1 Mo. App. 312 ; *Thompson v. First Nat'l Bank,* 111 U. S. 529. The legal relation of Herndon Bush to the parties who signed the partnership agreement is precisely the same as if he had actually signed it himself. (2) Business transactions were conducted under the partnership agreement. (3) The partnership was dissolved. It might be dissolved by tacit renunciation or by implication from circumstances ; it may arise in various ways, as by the withdrawal of a partner from the business of the partnership and engaging in other concerns, or by his refusal to act with the other parties in the business, or by his doing any other act utterly inconsistent with the continuing relation of partnership. Story on Part., secs. 272, 273 ; *Heath v. Lawson,* 4 B. & A. 175 ; *Jeffreys v. Smith,* 3 Russ. 158 ; *Johnson v. Evans,* 7 Man. & G. 240. When no definite term for the continuance of the partnership has been agreed upon, it may be dissolved at any time at the option of any member of the firm. *Carlton v. Cannings,* 51 Ind. 478 ; Story on Part., sec. 269 ; 3 Kent Com. (4 Ed.) sec. 43, p. 534. (4) The partnership was not formed for an illegal and fraudulent purpose. (5) The decree was based upon the finding of the referee, which was justified by the facts in evidence before him and ought not to be disturbed here. *Chapman v. McIlwrath,* 77 Mo. 38, 43 ; *Hendricks v. Wood,* 79 Mo. 590, 599 ; *Judy v. Bank,* 81 Mo. 404, 410.

HENRY, C. J.—The plaintiffs and defendant are brothers, sons of Jordan Bush, deceased, who, when this suit was brought, was, and for twenty years prior had been, of unsound mind and incapable of transacting business. The defendant, F. M. Bush, in 1858, assumed the control and management of his father's business, that of a farmer. F. M. Bush was the eldest of the children and the others worked on the farm under the direction of F. M., both before and after they became of age. About 1875 Herndon Bush, one of the plaintiffs, left the farm and was engaged as salesman and clerk in mercantile establishments in Callaway county until the spring or summer of 1880. In three of the four firms by which he was employed within that period F. M. was a partner. The other plaintiffs remained on the farm working under F. M. As the boys arrived of age F. M. made contracts with them to work on the farm. In 1874, with Allen, for three years' service at two hundred and forty dollars per annum, for which ($720) he gave him his note executed by himself. He also gave Allen a note for one hundred and five dollars signed Jordan Bush, per F. M. Bush. The boys while working on the farm claimed certain stock which was fed and raised on the farm. This stock was managed by F. M., who sold a portion of it with other stock belonging to their father, Jordan, but the greater portion remained there until after the alleged partnership, for a settlement of which this suit was brought, was formed. July 1, 1878, F. M., Samuel, and Allen entered into a partnership agreement in writing, which, by its terms, was to continue for life, if not sooner dissolved by mutual consent. By that agreement it was stipulated that Allen and Samuel should share equally with F. M. in all of the latter's services for their father for twenty years, to June 1, 1878, and he was to share equally with them in their services for their father,

Allen having served three years from December 31, 1877, and Samuel one year, February 1, 1878. That they should share equally in all the real and personal property which they respectively owned in Callaway county, and they assumed all debts then owing by either of them, or their father; and of all clothing purchased for either of them a correct account should be kept and accounts balanced at the end of the year. All other extras that either indulged in were to be at his own expense, true accounts to be kept of same and accounts to be balanced at the end of each year. There were other stipulations which it is unnecessary to mention.

After that agreement was executed they continued to work on the farm. It seems that Allen and F. M. had some disagreement in relation to some notes and accounts Allen had collected for mercantile firms of which F. M. was a member, Allen claiming that he had kept back a portion of the money so collected as his commission, for collections made. In November, 1880, F. M. sued him for this money, but prior to this, March 17, 1880, the four brothers met and discussed the formation of a partnership between them all, and the result was the execution by all of them of the following written agreement:

"Witnesseth: We and each of us pledge and in honor bind ourselves to enter into an equal partnership in all respects, both with regard to our personal property and real estate, wherever we may have it, either in Callaway county or elsewhere, and the money that each of us may have on hand shall be disposed of in the name of each of us combined as one firm. We and each of us, F. M., Herndon, Allen, and Samuel Bush agree to stand together as brothers and partners, and put forth our best endeavors to promote each other's best interests. This March 17, 1880." Signed by each of them. The next day, it seems, in pursuance of a verbal agreement,

F. M. and Allen went to Fulton and had Mr. Bailey, an attorney, write a contract as follows:

"This agreement entered into this eighteenth day of March, 1880, by and between F. M. Bush, A. D. Bush, Herndon Bush and Samuel Bush, all of the county of Callaway, in the state of Missouri, witnesseth that said parties have and do hereby form and enter into a co-partnership for the purpose of farming and general trading, and doing such other business as in the future said parties may desire or choose. That said partnership shall be known by the firm name and style of F. M. Bush & Brothers. That each of said parties hereby turns over, and transfers to said firm all property of every description now owned and held by him, including money, notes and accounts, real and personal property, said accounts to include any charges either of said parties may have against Jordan Bush, their father, for services rendered him since their arrival of full age. Said property as turned over to said firm, together with the increase thereof, to constitute the assets of said firm, and that each of said parties is to own an equal share in said firm assets. That said partnership shall exist so long as all of said parties live, unless by consent of all it be sooner dissolved. And in case that two of said parties object to engaging in any business transaction or speculation the others shall have no power to engage in or transact the same." Signed by F. M., A. D. and S. Bush, and on the same day F. M. deposited in the Southern Bank fourteen hundred dollars in the name and to the credit of F. M. Bush & Brothers, which he afterwards drew out.

The agreement was never signed by Herndon Bush, and there is testimony to the effect that he was advised not to sign it by the defendant, F. M. Bush. Herndon gave as a reason for not signing it "that Allen and F. M. were continually having ups and downs and he wanted to see if they would not be reconciled before he

signed the contract." In July or August, 1880, F. M. Bush asked the probate court to appoint a guardian for his father, which was done. Francis Brandon having been appointed he proceeded to take an inventory and Herndon, Allen and Samuel pointed out their individual property, claiming it as their own, not mentioning the partnership.

The matter was by the court referred to a referee who, on the testimony, found that the four brothers were partners, and proceeded to state the account between them. The court approved the report and entered judgment in accordance with it, over exceptions filed by defendant, from which he has appealed.

This is an anomalous case. Here a co-partnership agreement was entered into, first by three of the brothers, one of whom was the defendant. This was in July, 1878. Nearly two years afterwards all four of the brothers enter into another, by which they agreed (in the present tense) to stand together as brothers and partners, and put forth their best endeavors to promote each other's best interests. It seems then to have been in the contemplation of the parties that another agreement should be executed more specific in its provisions. That one of that character was prepared and executed by three of the brothers, the plaintiff being one, but that Herndon, the other brother, did not sign it. Still business was conducted by them in the partnership name of F. M. Bush & Bros. The defendant himself treated it as a partnership; deposited money to the credit of the firm, and did other acts in recognition of the partnership. True, other acts were done by him and the others which seem to be inconsistent with the existence of a partnership. Herndon, who never signed the last written agreement, one of the plaintiffs is alleging the partnership, while F. M., who signed them all, is contesting the existence of the partnership. He derived benefits from the partnership, and while so doing recognized its existence, and I do

not think that it lies in his mouth now to deny the partnership. The agreement of March 17, 1880, estab- lished a partnership relation between all the parties, if the subsequent agreement had never been made. Its existence did not depend upon the subsequent agree- ment, which was only intended as an adjunct to specify more particularly the terms of the partnership. The partnership was not dissolved by the failure of Herndon to sign the latter paper unless he so intended and they so accepted his refusal to do so. The existence of a part- nership or not often depends upon the intention of the parties—always as between the parties themselves.

After hearing all the evidence the referee found the existence of the alleged partnership, and his finding and report were approved by the court. It is a tangled thread and the referee and the judge of the trial court were far more competent than we to unravel it. We do not think that the partnership contemplated by the con- tract sued on was based upon an intended misuse of Jordan Bush's property. His property is not mentioned in either of the written instruments as a part of that em- braced in the partnership, nor is there any stipulation in either of said agreements from which it is a fair infer- ence that it was intended as a means of collecting claims against Jordan Bush for their services, or to appropriate his property to their use.

We are all of the opinion that the judgment should be, and it is, therefore, affirmed.