BEN W. BOON, Appellant, v. JOHN H. TURNER et al., Respondents.

Kansas City Court of Appeals, December 1, 1902.

1. **Partnership:** JOINT TENANTS: INDEMNITY: SURETIES. If a certain transaction presented in the record was an absolute sale, it either made certain sureties joint tenants or a partnership; if a mere indemnity to such sureties, on the payment of the debt, the title reverted to the principal.

2. ———: EQUITY: CONFLICTING EVIDENCE: DEFERRING TO TRIAL COURT. In an equity case, where the issue of partnership

arises and the evidence is conflicting, the appellate court will defer to the finding below.

3. ———: RULE: EVIDENCE: INTENTION.  Two or more persons combining their property, labor and skill in a given transaction for their common profit, are a partnership where each one has an interest and their intentions are to that effect.

4. ———: CREDITORS: INTER SESE: ESTOPPEL.  Parties may estop themselves to deny their partnership as to creditors, but there will be no estoppel *inter sese,* unless it is pleaded.

Appeal from Howard Circuit Court.—*Hon. John A. Hockaday,* Judge.

AFFIRMED.

*Sam C. Major* and *W. M. Williams* for appellant.

(1) The evidence shows that Boon entered into the partnership in good faith, and assumed one-third of the debt to the Glasgow Savings Bank as the consideration of the sale of a third interest to him in the stock of goods.  He permitted the business to be conducted in his name for over three years and assumed all the liability of a partner in said business during that time, under the belief that it was being conducted for his benefit.  He can not be bound by any private arrangement between Turner, Jackson and Burckhartt. (2) Plaintiff was not informed of the agreement between Turner, Jackson and Burckhartt.  He had no notice of this arrangement.  He assumed one-third of the debt and signed a new note upon which neither Burckhartt nor Mrs. Turner was bound, and for three years permitted the business to be conducted in his name, assuming all the liabilities of a partner, relying upon the fact that he was the owner of a third interest in the goods and was to receive one-third of the profits of the business.  Defendants led him to so believe and to act under that belief.  He had no notice that this was not a bona fide sale.  Defendants are now estopped to deny the partnership or the ownership of one-third of the goods by plaintiff.  (3) Turner and Jackson had

the right to give their interest in the goods to Burckhartt, but they can not so dispose of plaintiff's interest without his consent. (4) This is a suit in equity, and this court will examine the evidence and enter such judgment as is proper.

O. S. *Barton* and *Crawley & Son* for respondents.

SMITH, P. J.—This is a suit in equity having for its object the dissolution of an alleged partnership and for an accounting, etc.

The petition alleged that in November, 1897, said parties formed a co-partnership to purchase from defendant Burckhartt a stock of drugs and to continue the business with said Burckhartt as its manager; that said drugstore was bought and was thereafter conducted in the name of Turner, Jackson & Company under the management of said Burckhartt, until the first day of January, 1901, when defendant Burckhartt, who was in possession of the goods as the manager of the partnership, changed its name to the "Gem Pharmacy," and thereafter claimed to be the sole owner of the goods and the proprietor of the store, and that defendant Turner had transferred his interest therein to said Burckhartt, and that he, having possession of the goods and claiming the same, was therefore made a party defendant.

The defense pleaded in the answer was that plaintiff Boon and defendants Turner and Jackson were indebted to the Glasgow Savings Bank in the sum of fifteen hundred dollars as sureties upon a promissory note upon which said Burckhartt was principal, and that on the third day of November, 1897, said Burckhartt being indebted to various other persons, and desiring to indemnify said sureties, proposed to defendants Turner and Jackson that he would turn over to them and said Boon the stock of goods and books of account as a security or pledge, provided they would permit him to continue his business as druggist in their names—until he should be able to pay the note

out of said business; and that upon the payment thereof, their interest in the stock of goods and accounts should cease and the same should become the absolute property of said Burckhartt; that said proposition was accepted by said Turner and Jackson for themselves and acting for said Boon with his consent, and that the note referred to had been paid, and that under the agreement the property reverted to defendant Burckhartt.

The reply was a general denial. There was a trial before the court which resulted in a finding and judgment for defendant, and thereupon plaintiff appealed.

The evidence adduced at the trial shows about these facts, viz.:

Burckhartt and another were partners owning and conducting a retail drugstore. Burckhartt bought out his partner but to make the payments it became necessary for him to borrow fifteen hundred dollars of a bank. The defendants Jackson and Turner, who were his uncles, and the plaintiff, a close friend and a member of the same religious society, became his sureties on the note. Some time after this occurrence he found himself considerably indebted to the jobbers of whom he purchased goods, and fearing that he would not be able to pay those creditors when their demands should become due, and that in consequence thereof they would probably take legal steps to enforce the collection of the same, and in that way force the sacrifice of his stock and good will, and disable him to pay all his debts in full, which he would be able to do were he given time and permitted to go on with his business; filled with apprehensions of this kind, he went to his sureties and notified them of his embarrassment and at the same time expressed a desire to afford them indemnity in some way. Accordingly, two of his sureties—his two uncles—called upon Mr. Clark, an attorney, to inquire in what way, if any, Burckhartt could best secure them and plaintiff as his sureties on the said note to the bank with his stock of drugs. Mr. Clark, after a consideration of the matter so presented to

him, advised that Burckhartt turn over his stock to them as purchasers, he to retain possession and conduct the business for them under the name of Turner, Jackson & Company, until such time as he should be able, out of the profits of the business, to pay off said note. Mr. Clark testifies that he advised defendants Turner and Jackson that they could "let Burckhartt give them—his sureties—his stock of goods as security and let him go to work and make the money out of the property and pay off the debt;" and that when that was done the property would belong to him. The testimony of Jackson, Turner and Burckhartt was corroborative of that of Clark; and the first named further testified that after obtaining the advice of Mr. Clark that he went to see the plaintiff and made known to him Mr. Clark's advice and the arrangement Turner and himself were about to enter into with Burckhartt, and also inquired of him whether or not he wanted his name in that of the firm, and thereupon the plaintiff stated that whatever they— Turner and Jackson—did in the matter would be satisfactory to him; and he further expressed his satisfaction with the proposed firm name of Turner, Jackson & Company, as he did not care to have his name used in connection with it. Immediately following this, Burckhartt placed over the store door a sign with the name of "Turner, Jackson & Co." printed thereon, and caused to be printed in the local newspaper notice that said firm had bought the stock of goods belonging to Burckhartt and that it would continue the business in the same place with said Burckhartt in charge, etc. Burckhartt assigned his book of accounts to the said firm. The sureties took up Burckhartt's note in the bank by substituting their own in its place.

It is conceded that Burckhartt proceeded to carry on the business under the firm name. He made various purchases of goods from time to time in the name of the firm as were required to keep up the stock. He carried on the business as if the stock were the property of the said firm. He was, it would seem, quite successful in his conduct and management of

the business for he not only paid off the note to the bank with all the interest but the debts of the firm and himself to his other creditors, after which he took down the sign of the firm name above the store door and placed that of the "Gem Pharmacy" in its place. It is not contended that any one of the said sureties ever paid anything whatever on account of said suretyship.

The plaintiff contends that the transaction between Burckhartt and his sureties was an out-and-out sale to them and that according to his understanding the said sureties became partners in said store and business with Burckhartt as manager. On the other hand, the sureties Jackson and Turner with Burckhartt insist that the only interest which the said sureties acquired in said stock of drugs and accounts under that arrangement was an indemnity against loss by reason of the suretyship, and that when the debt to the bank was discharged they had no further interest therein and that the same became the property of Burckhartt.

If the transaction was an absolute and unconditional sale, then the stock belonged to the sureties as joint tenants, or if there was a partnership, then to it. But if the transaction was the grant of a mere indemnity by Burckhartt to his sureties for his debt to the bank and nothing more, then it is clear that when the debt was paid by him he was entitled to a release of the indemnity as against his sureties. The plaintiff testified that the sale was absolute and unconditional —but the three defendants all concur in testifying to the exact contrary. It is disclosed that all the parties to the transaction are persons of deservedly high standing in the community in which they live and are perhaps equally credible; and of these facts we are to presume that the trial judge had knowledge, and with that knowledge, after he had heard their conflicting testimony, concluded to reject that of the plaintiff and accept that of the defendants; and to this conclusion we must defer.

In no event would the plaintiff be entitled to the relief which he demands unless there was a partner-

ship agreement entered into.   It is stated in the elementary books that a partnership exists where two or more persòns combine their property, labor and skill in the transaction of business for their common profit. And whether there is a partnership *inter sese* must depend upon the interest of the parties.   Martin v. Cropp, 61 Mo. App. 607; Bush v. Bush, 89 Mo. 360. The rule is that whether persons are partners as to each other may be determined by their intention as the latter is expressed by the words of their contract or gathered from their acts and the circumstances attending the contract.   Bank v. Outhwaite, 50 Mo. App. 124; Hazell v. Clark, 89 Mo. App. 78; McDonald v. Matney, 82 Mo. 365; Kellogg v. Farrell, 88 Mo. 594; Mackie v. Mott, 146 Mo. loc. cit. 254; Priest v. Chouteau, 85 Mo. 398.   One of the serious difficulties in the way of the plaintiff is that there is no proof of a partship agreement of the kind relied on by him.   Nor did he testify that there was.   He testified that he "supposed there was a partnership."   While all other parties to the transaction which it is contended gave rise to such partnership, in their testimony expressly negatived its existence.

It must be conceded that the transaction, even as propòsed and carried out, resulted in a partnership by the sureties as to creditors.   As against the creditors of Turner, Jackson & Co., the sureties, they would be estopped to deny the partnership; but as between themselves no estoppel could arise, or if it could it would not be available to plaintiff in this suit because the pleadings disclose no such plea, which is indispensable.   Railway v. Curtis, 154 Mo. loc. cit. 20; Avery v. Railway, 113 Mo. loc. cit. 568; Hammerslough v. Cheatham, 84 Mo. loc. cit. 21; Ferneau v. Whitford, 39 Mo. App. loc. cit. 316.   While the transaction between Burckhartt and his sureties was in effect a partnership as to the outside world, we are unable to discover anything in that transaction or in the acts of the parties or the attending circumstances evincing an

intention on the part of such sureties to become partners as to each other.

The query has been put to us that if the sureties were not the absolute and unconditional purchasers of Burckhartt's stock of goods, why would they take the risk of permitting him to carry on the business and contract debts and liabilities in their partnership name? *Cui bono?* The answer to this, it seems to us, is not far to find when it is remembered that two of these sureties were Burckhartt's near relatives who were anxious and willing to do what they could in a financial way to keep him on his feet. This was prompted by the natural feeling which a more fortunate kinsman cherishes for another less so. And as to the plaintiff, the other surety, the explanation is found in his own testimony that Burckhartt was his close friend and that they were brethren in the same church. The admitted existence of these relations are of themselves sufficient to justify the inference that plaintiff was moved by considerations of friendship, rather than personal gain, to assist his friend and brother churchman in his endeavors to escape a threatened financial collapse.

After a rather extended review of all the evidence we have not been persuaded that the conclusion reached by the trial court was in any respect erroneous, and accordingly the decree of that court will be affirmed. All concur.