CLAWATER, Appellant, v. TETHEROW, Respondent.

1. A. purchased certain real estate in his own name and with his own money; at the date of the purchase he agreed with B. that if B. would before a certain specified time pay one-half of the purchase money he should be entitled to one-half of the land; *held*, that A., not paying any portion of the purchase money, had no interest, legal or equitable, in the land; that the contract of B. with A. was within the statute of frauds.

### *Appeal from De Kalb Circuit Court.*

It is deemed unnecessary to set forth the facts more fully than they appear in the opinion of the court.

*Shambaugh*, for appellant, cited 2 Story Eq. § 1050, 1201–1211, 385, 423, 439; Kent, Comm. 305–6; 2 Mo. 109; 15 Mo. 370; 21 Mo. 331; 1 Stark. on Ev. 74; 1 Greenl. Ev. § 27, 204; 19 Mo. 204; 14 Mo. 488; 2 Smith L. Cas. 544.

NAPTON, Judge, delivered the opinion of the court.

The petition in this case proceeds altogether on the assumption that James, from whom the plaintiff purchased, had an interest, equitable or legal, in the land which defendant had purchased from Clark. But looking at the petition and answer, and all the testimony in the case, which comes alone from James and Clark themselves, there is no ground for the assumption.

This is not a case of a purchase by one man in his own name with the money of another; nor is it the case of a purchase with one's own money in the name of another. The defendant purchased with his own money and took the title to himself. James, who acted as agent in negotiating the purchase, so far as we can see, had no interest in the land, equitable or legal. It seems from the petition and answer, as well as the testimony of James, that there was a verbal understanding between defendant and James that upon James' paying before the 1st of December, 1854, one-half of the purchase money and interest, he was to be a partner in

the ownership of the land. Conceding this contract to be obligatory, it did not make James a partner at the time of his sale to plaintiff. The fact was, as all the testimony shows, that he never paid a cent towards the purchase, nor even towards defraying the expenses of surveying and laying out the land into town lots.

There is an attempt in the petition to make the defendant's purchase the result of a fraudulent arrangement between defendant and James to cheat James' creditors; and, strange to say, James himself, who is the principal witness in the case, proves this charge to be true. But it is not easy to see how James' creditors could possibly be injured by the investment of defendant's money in the land, and, although James' intentions may have been as fraudulent as he himself represents them, and the defendant may have had every disposition to aid, nothing was done to promote such a scheme.

It might be very well questioned whether there was any consideration for the promise of defendant to James. It seems to be a mere *nudum pactum*. So far as the testimony shows, James advanced no money; and the effort of the plaintiff, who bought James' interest, seems to be to share in the profits of a speculation, if there are any, towards which James advanced nothing, contributed no means, and assumed no responsibilities or risk of any kind. This, however, is not material, as there was no proof that the contract or agreement was complied with, even if it was binding. That the contract was within the statute of frauds is plain; but as it was admitted in the shape we have stated it, that is not regarded as a material question in the case. Upon the whole, we think the circuit court properly dismissed the petition upon the hearing.

The other judges concur, judgment affirmed.