# DIAMOND CREEK CONSOLIDATED GOLD & SILVER MINING COMPANY, Appellant, v. THOMAS H. SWOPE.

### Division Two, May 14, 1907.

1. **PARTNERSHIP: Existence: Contract: Intention.** Except where parties have held themselves out as copartners and credit has been extended to them as such, when in fact they were not partners between themselves, a partnership is a relation between two or more competent persons resulting from a contract, and accordingly only exists where the parties intended to enter into a contract of partnership. A contract, which it is contended made the parties thereto partners, like other contracts, must be construed according to the manifest intention of the parties, and that intention must be ascertained from the contract itself and the surrounding circumstances.

2. ————: **Borrowing Money: Interest as Bonus: Undisclosed Principal.** An agreement by which one of the parties thereto agreed to give the other a one-fourth interest in a mine as a bonus for loaning him $25,000 to be used in purchasing and operating the mine, did not make the lender a partner of the borrower, who was also the purchaser of the mine; nor did that agreement constitute the lender an undisclosed principal of the borrower.

Appeal from Jackson Circuit Court.—*Hon. A. F. Evans*, Judge.

AFFIRMED.

*Grant I. Rosenzweig* for appellant; *G. W. Baker* of counsel.

Liability through partnership and agency is the same thing. Cato v. Huston, 7 Mo. 148; Chouteau v. Goddin, 39 Mo. 229; Martin v. Lutkewit, 50 Mo. 59; Pomeroy v. Benton, 57 Mo. 545, 77 Mo. 64; Filbrun v. Ivers, 92 Mo. 392; King v. Oil Co., 81 Mo. App. 165; Shoe Co. v. Lumber Co., 86 Mo. App. 443; 15 Enc. Pl. & Pr., 869. A dormant partner may always be sued

because he stands in the position of an undisclosed principal. Sessions v. Black, 40 Mo. App. 569; Provenchere v. Reifess, 62 Mo. App. 50; Higgins v. Dellinger, 22 Mo. 397; Ferris v. Thaw, 72 Mo. 446; Richardson v. Farmer, 36 Mo. 55; Winslow v. Stone, 169 Mo. 243; Snyder v. Burnham, 77 Mo. 52; Queen v. Crawford, 127 Mo. 356; Hornblower v. Crandall, 78 Mo. 581; Wetmore v. Crouch, 150 Mo. 682; Torbet v. Jeffrey, 161 Mo. 655; Tamblyn v. Scott, 111 Mo. App. 50; Kansas City Brick Co. v. Pratt, 114 Mo. App. 651.

*C. O. Tichenor* for respondent.

(1) This is not a suit by an outsider for something furnished to Howard, believing that he was a partner of Swope, but it is based upon a contract in writing whereby plaintiff and two others as vendors sold certain lands and personal property to Howard, the vendee, upon condition that he, and he alone, should do certain things looking to the payment of the balance of the purchase money. Hughes v. Ewing, 162 Mo. 261. Swope was to get a certain interest in the land alone, not in the whole of the property purchased, as a bonus for the loan. Howard was not required to purchase the land, as Ewing was in the Hughes case. Howard never did actually get any title to the land, and Swope never could get title to any part of it until it was paid for and until plaintiff's contract had ended by its completion; Swope was to get no profits by his contract with Howard. (2) Even if Howard had got the title to this land, and even had he made a deed to an interest in it to Swope as a bonus for this loan, he would not have been liable for any incumbrance on that land for the purchase money unless he had expressly assumed it. Hicks v. Hamilton, 144 Mo. 495.

GANTT, J.—This is an appeal from a judgment on demurrer in favor of defendant, by the circuit court

of Jackson county. Without repeating the formal language of the petition, it suffices to say that it avers that plaintiff is a corporation, and upon November 28, 1893, was the owner and in possession of a certain mining property in California, known as the Eagle Bird Mine, comprising real estate, hoisting works, stamp mill, and other improvements, the same being free and clear of all liens and charges. Loupe and Frank were the chief stockholders of the Diamond Creek Company, owning practically all of the stock. At that time Howard appeared upon the scene and a contract was entered into in writing between Howard on the one side and on the other side the Diamond Creek Company, Loupe and Frank, wherein it was agreed (by way of carrying out a sale of the mining property to Howard) as follows: Deeds and bills of sale in favor of Howard covering all the real and personal property of the Diamond Creek Company, were to be executed and placed in escrow in the hands of the American Bank, together with all the corporation shares duly assigned. Howard was to pay ten thousand dollars cash at the time the conveyances were placed in escrow. Howard was to go into the immediate possession of all the mining property, carrying on development and mining work upon the same in a reasonable and proper manner, without any expense to the Diamond Creek Company, Loupe or Frank, and was to keep track of the ore taken from the mine, and was to place in the hands of the American Bank for the benefit of the Diamond Creek Co., Loupe and Frank, one-half of the net profits derived from the working of the mine, until the sum so deposited should amount to twenty thousand dollars (in addition to the ten thousand dollars), at which time Howard should be entitled to receive from the American Bank the full title. Howard further agreed until full payment of the deferred twenty thousand dollars he would not suffer the mining premises to be encumbered by any debts or

liens for labor or material of any kind or character whatsoever, and would pay all such debts at maturity, to the end that in case he should fail to make the deferred payments, all property should be returned to the sellers free and clear of all and every encumbrance made or suffered by or through Howard. In case Howard should cease operations for sixty days (except for fires, strikes or unavoidable casualty) the agreement should be terminated and Howard's right to purchase the property should cease, and all the conveyances, etc., placed in escrow should be returned to the Diamond Creek Company, Loupe and Frank. In case all the payments above mentioned are made by Howard or whenever he pays the said twenty thousand dollars he is to have all documents of title from the American Bank. The agreement was signed by Diamond Creek Company, Loupe, Frank and Howard.

The conveyances aforesaid were executed and placed in the hands of the American Bank, and Howard was placed in immediate possession and control of all the real and personal property, machinery, etc., and the sellers fully performed in every way. The first payment of ten thousand dollars was made by Howard and also an additional sum of six hundred dollars, but nothing further. Howard continued in possession of the mining property from November, 1893, until July, 1896, working and operating the mine. But Howard and Swope, Swope being the principal and partner of Howard as hereinafter more fully recited, committed a breach of the contract in that they did not carry on the development of the mine in a reasonable and proper manner without expense to the sellers, and did not render statements of the operations, and did not place in the hands of the American Bank one-half of the net profits, and did not continue the operations and did not pay over any proceeds, and did suffer the mining property to be encumbered by debts and liens for labor and

material incurred during the time that Howard and Swope were in possession of the premises, and did not pay and discharge all debts, to the end that the property should be returned to this plaintiff free and clear of encumbrance made and suffered by Howard and Swope in case they should fail to make the deferred payments provided for. On the contrary, while Howard and Swope were in possession and were developing the property, they employed upon the same a large number of miners, etc., and about July 1, 1906, Howard and Swope abandoned the property without cause or excuse, and about that date the Diamond Creek Company recovered possession of its property. But at that time of abandonment, Howard and Swope were indebted to their miners and workmen in a sum aggregating $6,471.80 for work done while they were in possession and operating, for which sum, in accordance with the laws of California, the miners and workmen were entitled to miners' liens upon the property; that the miners accordingly, within thirty days after suspension of work, filed their miners' liens against the property, which liens were a valid and subsisting claim against the property of this plaintiff. And these lien claims, in the proper court of California having jurisdiction, were duly foreclosed and carried to a judgment of lien against the property, which liens the Diamond Creek Company to the amount aforesaid was obliged to pay and did pay, to save its property from utter loss, which liens and judgment bore interest at seven per cent. Whereby there became due to this plaintiff $6,471.80 with seven per cent thereon from July 1, 1896. That out of the operation of the mine under Howard there was in fact realized a net profit of $2,400, of which $1,200 (being the half) should have been paid to plaintiff, but Howard only paid six hundred dollars, leaving six hundred dollars unpaid and due on that account, with interest from July 1, 1896.

That by reason aforesaid plaintiff has been damaged in the total sum of $7,071.80 with interest from July 1, 1896, which was demanded upon July 2, 1896, but has never been paid. That in all the foregoing proceedings, Howard acted in his individual name, but the fact in reality was that upon November 14, 1893, there had been executed between Swope and Howard a contract as follows:

"Whereas, one E. C. O. Huhn has an option dated November 2, 1893, from the Diamond Creek Consolidated Gold and Silver Mining Company for the purchase of certain mining property therein described, situated in Nevada county, California, which provides among other things, that the said Huhn may take possession of said property upon the payment of ten thousand dollars to the said company, and work the same, accounting to said company thereafter for one-half the net profits arising therefrom, and that when the said company shall have received twenty thousand dollars out of such profits, the said property shall be absolutely conveyed to the said Huhn, to which written option reference is made for the better understanding of the following contract, and, whereas, Frederick Howard of Jackson county, Missouri, by agreement with said Huhn has the right to proceed under the said option to purchase such mining property, and is about to go to California to investigate the same, and the title thereto and to determine the advisability of proceeding under the said option, or such other more satisfactory option as may be had to purchase the said property, and is desirous of obtaining a loan of twenty-five thousand dollars for two years at six per cent interest, and,

"Whereas, Thomas H. Swope of Woodland county, Kentucky, has heretofore agreed to loan twenty-five thousand dollars to the said Howard on the joint and several note of himself, Wilson Waddingham and E. C. O. Huhn, payable two years after date with interest at

the rate of six per cent per annum. Now, therefore in consideration of the premises and of other good and valuable consideration, the said Howard and Swope do hereby agree with each other as follows:

"1st. The said Swope is to pay the said Howard twelve thousand five hundred dollars on the execution of this contract (the receipt of which is hereby acknowledged) and is to pay him twenty-five hundred dollars on December 14, 1893; twenty-five hundred dollars on January 14, 1894; twenty-five hundred dollars on February 14, 1894, twenty-five hundred dollars on March 14, 1894; twenty-five hundred dollars on April 14, 1894; making a total payment of twenty-five thousand dollars as hereinbefore provided. The said Howard agrees to accept such deferred payments of twenty-five hundred dollars each at the office of George W. Lee in Kansas City, Missouri, and the said Swope agrees to pay interest on such deferred payments at the rate of six per cent per annum from this date until such payments are respectively made and settled for such interest as may be due at the office of George W. Lee aforesaid on May 14, 1894.

"2nd. The said Howard is to give said Swope on the execution of this contract a promissory note of even date hereunto for twenty-five thousand dollars, made by him, the said Howard, and the said Wilson Waddingham and E. C. O. Huhn, payable on or before two years from date with interest at six per cent per annum, payable semiannually (the receipt of which note is hereby acknowledged by said Swope) and the said Swope agrees to accept at any time before the maturity of such note payments thereon in sums of not less than twenty-five hundred dollars, such payments to be made for his credit at office of George W. Lee aforesaid.

"3rd. The said Howard agrees as soon as practicable after the execution of this contract to proceed to

investigate the said mining lands and the title thereto, so as to determine the advisability of proceeding under such option for the purchase of said lands, and if after making such investigation he elects not to proceed under such option, or other more satisfactory option, he agrees at once to repay to said Swope the sums already loaned to him, under this contract, without waiting for the maturity of said note.

"4th. If the said Howard shall elect to proceed under said option for the purchase of such lands, he is to take the title to the same in his own name, and cause the deed conveying such title to him to be placed in escrow or otherwise secured, under the provision of such option, and at the same time shall execute and deliver to said Swope a declaration of trust or other instrument legally transferring and conveying to said Swope an undivided one-fourth of such lands, or the interest acquired therein by said Howard. It is understood and agreed that this interest in such lands is to be conveyed to said Swope as a bonus, for making the aforesaid loan of twenty-five thousand dollars at six per cent interest.

"5th. It is understood and agreed that the decision whether or not to proceed under such option for the purchase of said land shall rest solely in the discretion of the said Howard, and if he shall elect to proceed under such option, he shall have the exclusive control and management of the said land, and the working and developing thereof, until a corporation shall be organized as now contemplated, to which said lands shall be conveyed.

"6th. It is understood and agreed that the liability of the makers of said note does not in any wise depend upon this contract, or upon the success or failure of the mining operations herein provided for, but is fixed by the terms of the note itself.

"7th. It is understood that the said Howard does

not agree to investigate all the lands described in the said option with Huhn, but only the most valuable part of them, or enough thereof to satisfy his judgment as to the advisability of proceeding under said option, and it is further understood that the most valuable part of said lands are the three tracts first set out and described in said option.

"In witness whereof, the parties hereto have set their hands to duplicate copies hereof this 14th day of November, 1893.

"FREDERICK HOWARD.
THOMAS H. SWOPE.

"Witness: T. A. FRANK JONES."

That the said contract with said Diamond Creek Company was made by Howard in pursuance of said Swope contract and was accepted by Swope as such and in all things aforesaid the said Howard was in fact the agent and partner of this defendant, Thomas H. Swope, and the said Swope was the principal and partner of the said Howard and all things done by the said Howard aforesaid were in fact done by him for and on behalf of the said Swope and the said Swope did not authorize the same to be done by the said Howard in advance but did afterward approve and ratify the acts of the said Howard aforesaid, and said Swope did knowingly have, receive and accept all benefit of both said contracts and is estopped to deny the obligations thereof.

That the relations of the said Swope to the matters aforesaid was not disclosed or known to this plaintiff until long after the year 1896, viz: in the month of October, 1902. And that prior to the month of October, 1902, the said Swope was an undisclosed principal and partner in all the matters aforesaid as done by said Howard. That by reason of the premises the damages

aforesaid are due to the plaintiff from the defendant Thomas H. Swope.

Wherefore, the plaintiff prays judgment against the defendant in the sum of ten thousand dollars with interest thereon at six per cent per annum from filing this petition, costs and all other proper relief.

To this petition defendant Swope demurred as follows: ''Now comes defendant and demurs to the petition herein, because:

''1. It charges him as a partner of Frederick Howard in the transaction stated, and it also charges that he was not the partner of said Howard in said transaction, but was undisclosed principal, Howard having entered into the transaction in his own name, but as the agent of defendant;

''2. Because the petition shows he was neither the partner of said Howard nor was Howard his agent, nor was he an undisclosed principal.''

The circuit court sustained the demurrer, and plaintiff declining to plead further final judgment was rendered for defendant, and plaintiff appeals.

I. The plaintiff summarizes its contention in these words: ''We therefore return to the original proposition that on the face of our petition, Howard bought the Diamond Creek property agreeing to handle it properly and on failure to pay the purchase price, return the same in good condition free from liens, in all of which particulars Howard defaulted; that Howard acting in this matter in his name, was really the authorized but undisclosed representative of defendant, Swope (with others), whether that authority be called the authority of partner, agent, servant, employee or what not, and that such authority arose from the Swope-Howard contract (whether agency or partnership), including a joint ownership of the property and (of necessity) a proportionate share in its pro-

ducts and profits as well as performance of that contract and acceptance of the benefits thereof, and subsequent ratification."

Notwithstanding the general allegations that the defendant was a partner or an undisclosed principal of Howard, it is certain that any liability the defendant is under to the plaintiff must be spelled out of the two contracts, the one of November 28, 1893, between the plaintiff, Frank, and Swope, on the one part, and Howard on the other, and the contract of November 14, 1893, between Swope and Howard, because there is no other promise or agreement pleaded in the petition, and not only are no facts stated by which the defendant would be estopped to deny a partnership on the ground that he had held himself out to third parties as a partner of Howard, but the plaintiff alleges that it did not know of the existence of the contract between Swope and Howard until October, 1902, about nine years after the contract of November 28, 1893. The question, then, is, can the claim of the plaintiff that the contract of November 14, 1893, between Swope and Howard constituted them partners, be sustained? Except in cases in which parties have held themselves out as copartners and credit has been extended to them as such, when in fact they were not partners between themselves, a partnership is a relation between two or more competent persons resulting from a contract, and accordingly only exists where the parties intend to enter into a contract of partnership, for this, like other contracts, must be construed according to the manifest intention of the parties and must be determined by the contract itself and the surrounding circumstances. [Parsons on Partnership, page 58; Mackie v. Mott, 146 Mo. l. c. 254; McDonald v. Matney, 82 Mo. l. c. 365; Priest v. Chouteau, 85 Mo. 398.] It has often been ruled in this State that a mere participation in profits and loss does

not necessarily constitute a partnership between the parties so participating. In the light of this well-settled principle, we are of the opinion that it cannot be fairly said that by the promise or the agreement between Swope and Howard of November 14, 1893, they intended to become partners. The great burden of the argument on behalf of the plaintiff is that, because by their contract Howard was to convey an undivided one-fourth of the lands which he should acquire by virtue of his contract with the plaintiff as a bonus for Swope's making the loan of twenty-five thousand dollars to Howard, that constituted defendant a partner. In Kellogg Newspaper Company v. Farrell, 88 Mo. l. c. 597, Judge NORTON, speaking for this court, said: "A mere participation in profits and loss does not necessarily constitute a partnership between the parties so participating. . . It is a question of intention. . . Each case must be determined upon its own peculiar facts. In seeking for the intention of the parties, the whole instrument must be looked to, and viewing the agreement in question in its entirety, it is apparent, we think, that it was not the intention of Farrell and Lindenberger to form a partnership between themselves, for it is expressly stated that Farrell turned over to Lindenberger the Post-Observer newspaper, not to be conducted by them jointly as partners, but, on the contrary, to be conducted by him in every respect as if he were the owner thereof, and that he should conduct the business in his own name and pay all the expenses attending the running thereof. These expressions negative any intention of the parties to form a partnership." So in the fourth clause of the contract between Howard and defendant, it is agreed that "if Howard shall elect to proceed under said option for the purchase of said land, he is to take the title to the same in his own name and cause the deed

conveying such title to him to be placed in escrow, or otherwise secured under the provisions of such option, and at the same time shall execute and deliver to said Swope a declaration of trust or other instrument legally transferring and conveying to said Swope an undivided one-fourth of such lands or the interest therein acquired by said Howard. It is understood and agreed that this interest in such lands is to be conveyed to said Swope as a bonus for making the foregoing loan of twenty-five thousand dollars at six per cent interest,'' and in the next clause, it is agreed that if Howard shall elect to proceed under the option given Huhn by the plaintiff, ''he shall have the exclusive control and management of the said land and the working and development thereof.'' No amount of words, in our opinion, can make out of this contract between Howard and the defendant anything else than a contract by which the defendant agreed to loan Howard twenty-five thousand dollars at six per cent interest, with the view to the said Howard acquiring the mine in California, and as a bonus for making said loan, Howard was to convey to defendant an undivided one-fourth interest in the lands acquired by him under the Huhn option. It was expressly provided that the liability of Howard and his co-makers on the note, Waddingham and Huhn, did not in any wise depend upon this contract or upon success or failure of Howard's mining profits. There was not the semblance of an agreement between Howard and defendant that they were to become partners in said mining enterprise, and by no fair and reasonable construction can it be said that it was their intention to form a partnership. The defendant was not even to get an interest in the whole property, which consisted not only of the land in which the mine had been opened by the plaintiff, but of mining supplies, tools, implements, household furniture and generally all the property of the plaintiff situated at the said

mine, except the merchandise in the store at said mine. The facts of this case do not tend as strongly as those appearing in Hughes v. Ewing, 162 Mo. 261, to establish a partnership, and it was held in that case that no partnership was established. In our opinion, the circuit court correctly held that the petition did not state facts sufficient to constitute the defendant either a partner or an undisclosed principal of Howard, and that the demurrer was properly sustained and the judgment of the circuit court is affirmed.

*Fox, P. J.,* and *Burgess, J.,* concur.