JOHN A. SPURLOCK, Respondent, v. GEORGE B. WILSON, Appellant.

Springfield Court of Appeals, November 6, 1911.   Motion to Modify Judgment Withdrawn, December 23, 1911.

1. PARTNERSHIP: Partnership in Real Estate: Sufficiency of Evidence: Statute of Frauds. Plaintiff sued for a partnership accounting, alleging among other things a partnership interest in a certain lot, 'the legal title to which was in defendant's name and the purchase price of which had been paid by defendant. Plaintiff claimed that defendant upon the purchase of the lot had agreed to convey a half interest in said lot to plaintiff, upon the payment by plaintiff of half the purchase price and that subsequently defendant had refused to comply with this agreement. The evidence is examined and held insufficient to show that the lot was partnership property and not being partnership property the agreement to deed plaintiff a half interest therein was clearly within the Statute of Frauds and was uninforcible because not in writing.

2. ———: Created by Contract: Intention. A partnership is a relation between two or more competent persons, resulting from a contract and, between the parties, exists only when they intend to enter into a contract of partnership.

Spurlock v. Wilson.

3. ———: ———: ———: **Partnership in Real Estate.** Persons may engage as partners in the exclusive business of buying, selling and dealing in real estate, but the intention so to do should be made very clearly to appear.

4. ———: ———: **Common Ownership of Propertly Not Sufficient.** The common ownership of property does not of itself create a partnership between the owners, though they may use it for the purpose of making gains and they may, without becoming partners, agree among themselves as to the management and use of the common property and the application of the proceeds therefrom.

5. ———: **Illegal Contract: Accounting.** In an action for a partnership accounting it appeared that at the time of the commencement of the alleged partnership, plaintiff was recorder and defendant circuit clerk of Douglas county, and they agreed to work together in the bringing of certain tax suits and to purchase the fees of the officers therein and buy in the tax lands and each contribute half of the money therefor. Subsequently certain tracts of lands were purchased at these tax sales. Later, some of these tracts were sold by plaintiff and others by defendant, the defendant receiving a larger sum than plaintiff in the sale thereof. *Held*, that as there was nothing to show that any money derived from discounting the officers' fees was used in payment for these lands that plaintiff could be decreed an accounting in the money received from the sale of said lands, even if said original partnership contract to purchase fees was illegal.

Appeal from Greene Circuit Court.—*Hon. James T. Neville*, Judge.

Reversed and remanded, (*with directions.*)

*A. H. Buchanan* and *Woodruff & Luster* for appellant.

(1) The only partnership agreement alleged in plaintiff's petition and upon which he seeks to recover in this action is void for its purpose contemplates the violation of the provisions of the statutes of this State. Roselle v. Bank, 141 Mo. 36; Downing v. Ringer, 7 Mo. 585; Knapp v. Culbertson, 152 Mo. 147; Beck v. Seal, 48 Mo. App. 475; R. S. 1899, sec. 2119; 30 Cyc. 356; 9 Cyc. 566. (2) Plaintiff seeks to sustain his action on

the theory as alleged in his petition that the agreement made in January, 1905, embraced and contemplated the purchase of real estate outside of the tax suits, and that the one hundred and sixty acre tract and the four acre tract and lot 6, were all purchased by the partnership as created under the partnership contract as alleged to have been made in January, 1905. This he disproves by his own testimony, and such is the finding of the referee. In other words plaintiff alleges one contract and recovers under an entirely different contract which cannot be done. Wonderly v. Christian, 91 Mo. App. 158; Schneider v. Patton, 175 Mo. 723; Reed v. Boot, 100 Mo. 62; Chitty v. Railroad, 148 Mo. 74; Yarnell v. Railroad, 113 Mo. 570; Woods v. Campbell, 110 Mo. 572; Standard Milling Co., v. Transit Co., 122 Mo. 277; Cole v. Armour, 154 Mo. 351; McDonnell v. Stevenson, 104 Mo. 191; Laclede Const. Co. v. Iron Works, 169 Mo. 155; Deyer v. Hunt, 50 Mo. App. 542; Johnson v. Bank, 102 Mo. App. 309; Bagnell Timber Co. v. Railroad, 180 Mo. 420. (3) The elements of a partnership contract include the mutual consent of the parties to undertake a business in which there must be such a community of interest as empowers each party to make contract, incur liabilities, manage the whole business and dispose of the whole property; a right, which upon the dissolution of the partnership by death of one passes to the survivor and not to the representatives of the deceased. There must be an intention to form a partnership and the mere division of profits and losses is not sufficient to constitute a partnership. Mackie v. Mott, 146 Mo. 230; Mining Co., v. Swoop, 204 Mo. 365; 30 Cyc. 357; Donell v. Harshe, 67 Mo. 173; Musser v. Brink, 68 Mo. 249; Ashley v. Shay, 82 Mo. 76; Gillie Hdw. Co. v. McCleverty, 89 Mo. App. 154; Bank of Osceola v. Authwait, 50 Mo. App. 128; Beatty v. Clarkson, 110 Mo. App. 5; Sain v. Rooney, 125 Mo. 176; Dryerle v. Hunt, 50 Mo. App. 541. (4) The presumption is against the existence of

a partnership in lands. The mere purchase of real estate and improving it for the purpose of selling at a ˅ᴄofit is not sufficient to constitute the purchasers co-partners. Unless the agreement shows that the parties intended to become co-partners, they are treated merely as tenants in common. 30 Cyc. 355; Clark v. Sidney, 142 U. S. 642; Hughes v. Ewing, 162 Mo. 261; Thompson v. Holden, 117 Mo. 127; Norton v. Brink, 110 N. W. 668; Blair v. Shaffer, 33 Fed. 218. (5) The agreement under which the 160 acre tract and the 4 acre tract and lot 6 were purchased, according to plaintiff's own testimony, falls far short of constituting partnership contracts. Clawater v. Tetherow, 27 Mo. 241; Pounds v. Egbert, 102 N. Y. S. 1079; Mancusco v. Rosso, 116 N. W. 679; McKinly v. Lloyd, 128 Fed. 519; Morton v. Nelson, 32 N. E. 916. (6) According to plaintiff's version of the agreement between him and defendant concerning the purchase of lot 6, it not only lacked every element of a co-partnership, but was wanting in mutuality and was at most a mere *nudum pactum,* unilateral and void. Steffen v. Railroad, 156 Mo. 322; Morrow v. Express Co., 28 S. E. 998; Dennis v. Slyfield, 117 Fed. 474; McCaw Mfg. Co. v. Felder, 41 S. E. 664; Transportation Co. v. Bolt & Nut Co., 114 Fed. 77; Campbell v. Handle Co., 94 S. W. 815; Rankin v. Michem, 53 S. E. 854; Price v. Atkinson, 94 S. W. 814; Watson v. Gross, 87 S. W. 104; Hollman v. Gonlon, 143 Mo. 369; Sarran v. Richards, 151 Mo. App. 656; Norton v. Brink, 110 N. W. 668; Clawater v. Tetherow, 27 Mo. 241. (7) According to Plaintiff's version of the agreement between him and the defendant concerning the purchase of lot 6, it is evident that it is not only wanting in every element that would constitute a binding contract, but being oral it is also void under the statute of frauds. Clawater v. Tetherow, 27 Mo. 241; Norton v. Brink, 110 N. W. 668; Levy v. Brush, 45 N. W. 598; Allen v. Richard, 83 Mo. 55;

160 App.—2

Pounds v. Egbert, 102 N. Y. S. 1079; Butts v. Cooper, 44 So. 616; Mancuso v. Rosso, 116 N. W. 679; Parson v. Phelan, 134 Mass. 109; Morton v. Nelson, 32 N. E. (Ill. Sup.) 916.

*Fred Stewart* and *G. A. Watson* for respondent.

(1) The partnership agreement was not unlawful and was not void as being in violation of the statutes of this state. Section 2119, R. S. 1899, prohibits clerks and other officers from buying fees taxed as costs in courts for less than par value, and there is no evidence that any such purchase was contemplated by the partnership entered into by the plaintiff and defendant. State v. Wilson, 130 Mo. App. 151. (2) A contract between parties to become partners under certain contingencies will not hinder them from drifting into a partnership by their subsequent actions and agreements independent of the contemplated contingencies. Tamblyn v. Scott, 111 Mo. App. 46; Pardue v. McCallum, 116 Mo. App. 603. (3) Plaintiff testified that they agreed to undertake the business to furnish an equal amount of capital; to share the profits; to divide the losses. The first case cited under this head in appellant's brief expressly holds that the right to dispose of the whole property does not apply to a partnership in real property, and says that so to hold would be to deprive the parties of the right to contract. Mackie v. Mott, 146 Mo. 254. (4) There is no ban on partnerships in real estate in our law. A partnership may be entered into as freely as in personal property. A partnership from a single transaction in real estate may arise from the acts and relation of the parties. Hunter v. Whitehead, 42 Mo. 524. (5) What constitutes a partnership is a question of law for the court while the question of the existence of the constituent elements of a partnership is one of fact for the jury. Hughes v. Ewing, 162 Mo. 295; McDonald v. Matney, 82 Mo. 358.

GRAY, J.—Plaintiff alleged in his petition that on or about January 1st, 1905, he and the defendant entered into a partnership contract for the purpose of buying, selling and dealing in real estate, and to buy officers and court fees; that by the terms of the agreement, each party was to furnish an equal amount of money, time and labor, and to bear the expenses and losses equally, and to share likewise in the profits; that the said partnership purchased and owns real estate purchased by the firm with firm money and for firm purposes.

The petition describes a number of tracts of land which it is alleged were purchased under said arrangement and belong to the partnership. In the tracts so described is a piece of property in the city of Ava, Mo. The petition further alleged that no settlement had been made of the partnership affairs, and prayed for the appointment of a referee and an accounting.

The defendant answered, claiming to own the town property, and denying that plaintiff had any interest therein. The answer further admitted the common ownership of the parties in certain other tracts described in the petition, but denied under oath that he entered into a partnership with plaintiff, as alleged.

Arthur M. Curtis was appointed referee, and in due time heard the evidence and filed his report. The referee found that in 1905 plaintiff was the recorder of deeds of Douglas county, and defendant was the circuit clerk for said county, and that they entered into an oral agreement to purchase all the sheriff, printers and other fees in tax suits against lands in Douglas county, the defendant to do the clerical work, and the plaintiff to furnish necessary data for bringing suits, and after the sales, to divide the net proceeds between them equally; that in case of a loss, each was to share the same equally; that many of the tracts sold under tax judgments failed to bring enough to cover the fees and taxes, and the parties hereto purchased said

tracts and later sold them and divided the money; that the deeds to most of the tracts so bought were taken in the name of the defendant, though some few weren taken in the name of plaintiff, but in each instance, they were jointly interested and after the sales, divided the proceeds equally; that this agreement continued, and the parties so acted and dealt under the same until January, 1907, when both went out of office, and at that time they made complete settlement of all tax suits that had been brought and lands sold, but there remained three tracts in which both were interested; that neither party had accounted to the other for the half of said sales. The referee further found that after January, 1907, all tax suits were brought by defendant alone, and that plaintiff had no interest in them, nor in any of the lands that were brought in by the defendant after such time.

The referee further found that in December, 1907, plaintiff and defendant jointly entered into an agreement to purchase, and did, in said month, purchase the lot in the city of Ava, paying therefor the sum of $1,000.00; that the defendant paid of that amount $600 in cash, and the parties executed their joint note for the remainder, and which was paid by the defendant, and that the deed to said property was taken in the name of the defendant; that after the purchase, the parties occupied the property with offices, and contributed equally for the repairs, and they so occupied said property until February, when this suit was brought; that about the time the suit was brought, plaintiff offered to pay defendant one-half the amount he paid for the lot, but defendant refused to accept the same. In addition to the lands purchased at sales for taxes, and the town lot, the parties purchased two other tracts. One was a four acre tract, and the title was taken in the name of both parties. The other was a 160-acre tract, and the deed was made to the defendant, but each one

of the parties paid, at the time of the purchase, one-half of the purchase price.

In his conclusions of law, the referee found that the parties were partners in the purchase of the fees in the tax suits, and the purchase of the lands at tax sales; that the contract for the purchase of the town lot, the four acre tract and the 160 acre tract above mentioned; were partnership contracts, and that the parties were acting as partners when the lands were purchased.

The defendant filed exceptions to the report of the referee which were sustained in part, but judgment was rendered declaring that the parties each had one-half interest in the three tracts just mentioned. In due time defendant filed his motion for new trial, which was overruled, and he has brought his cause to this court.

The single question on this appeal is the correctness of the judgment decreeing that the parties are joint owners of the town lot. The plaintiff alleged in his petition, that the partnership was for the purpose of "buying, owning, handling and dealing in real estate and to buy officers and printers and court fees;" that the partnership was entered into January 1, 1905, and ended about February 20, 1909. The referee found that the partnership at the time it was formed, was limited to the purchase of fees in tax suits, and in interest in lands purchased at tax sales; that the parties acted under the agreement until January, 1907, and that since said time the planitiff has had no interest in any of said business, but the same had been carried on by the defendant on his own account. The referee failed to find that the town lot was purchased under the original partnership agreement. This finding was justified by the evidence. There was no other partnershp agreement alleged in the petition. The referee, however, found that partnership agreements were entered into when the four

acre tract, the 160 acre tract and the town lot were purchased.

Waiving the question that these partnerships were not alleged or relied on in the petition, was the evidence sufficient to justify such finding? The testimony of plaintiff was as follows:

"Q. Now, with regard to the purchase of this land, outside of the tax land, state the circumstances of it? A. There is four acres of land south of town, I had it fenced and set out in trees and we bought that and I think it is deeded to both of us, I am not sure about that and then this land down in 14, township 25, range 15.

Q. How much is that? A. One hundred and sixty acres, it belonged to Luke Porter, and he offered to sell it for $300, and we thought we could make some money on it and I went down and wrote the deed and he signed it and I taken the deed in the name of Geo. B. Wilson, and gave him $300 and when I came back Mr. Wilson gave me a check for his half.

Q. This town property, state the circumstances under which it was bought? A. This belonged to Mrs. Harten, a widow woman, and we were officing upstairs in the Citizens Bank.

Q. That was after your terms of office expired? A. Yes, sir; and we talked about the matter and I saw her and she said she would take one thousand dollars for it, and I came and told Mr. Wilson he could buy it for $1000, and I didn't have the money to pay my share, and he says: "You will have the money, and if you can buy it that way, go ahead and buy it, and I bought it from her; she came in and made the deed, I taken the acknowledgment and made it to Mr. Wilson, and that same day he offered to give me a quit claim deed and I told him no, to wait until I paid him.

Q. It was understood by you and him that it was to be held as this other land? A. Yes, sir.

Q. Who furnished the money? A. Wilson.

Q. He paid the entire $1000 for the property? A. I guess he did.

Q. Did you give a note for the deferred payments? A. Yes, sir.

Q. Who signed that note? A. George B. Wilson and John A. Spurlock.

Q. Mr. Wilson afterwards paid that note? A. Yes, sir; and when I offered to settle and take a deed he said he would never make me a deed."

The evidence further showed that after the purchase of the lot, the parties moved into the building on it and plaintiff occupied the front room as his real estate office, and the defendant, the back room as a law office. The plaintiff testified that he bought the town lot as his own property; that he paid $600 cash, and that he gave his note for the balance, and that plaintiff signed the note with him as surety; that after the lot was purchased, there was some painting done on the building, including a sign for the plaintiff and one for the defendant; that after the repairs were made, the plaintiff gave him his check for $21.

The defendant further testified that at the time the town lot was purchased, he asked plaintiff if he wanted a half interest in it, and that plaintiff replied "not now." The plaintiff was corroborated by other witnesses who testified to admissions of the defendant recognizing plaintiff's interest in the lot.

In Mining Company v. Swope, 204 Mo. 48, 102 S. W. 561, it is said: "Except in cases in which parties have held themselves out as copartners and credit has been extended to them as such, when in fact they were not partners between themselves, a partnership is a relation between two or more competent persons resulting from a contract, and accordingly only exists where the parties intend to enter into a contract of

partnership, for this, like other contracts, must be construed according to the manifest intention of the parties and must be determined by the contract itself and the surrounding circumstances." This is the last expression of our Supreme Court, and it is the law so far as this court is concerned.

In determining this issue of partnership, we must also keep within the following rule of our Supreme Court: "Persons may engage as partners in the exclusive business of buying, selling, and dealing in real estate and, in such case, the real estate owned by the firm is, in equity, and for partnership purposes, to be treated as personalty. The title would be held in trust for the use of the partnership whether in the name of all or one or more only of the partners. In order to thus transform real estate from its usual character to that of personalty, the intention to do so, should be made clearly to appear. Unless then the contract, under which defendant claims a partnership interest in the land in suit, fairly excludes every construction under which the property can retain its usual characteristics of real estate, we think it should be held not to have created a partnership in the land." [Thompson v. Holden, 117 Mo. l. c. 127, 22 S. W. 905.]

When was this partnership formed? The plaintiff says in 1905; the defendant says never. The referee found that a partnership was formed in 1905, but it was limited to certain purposes, and that the parties ceased to transact business under it with the close of the year of 1906. He found, however, that different partnerships were formed. Neither of the parties gave a word of testimony to the effect that they formed, or intended to form a copartnership after their terms of office expired. The common ownership of property does not of itself create a partnership between the owners, though they may use it for the purpose of making gains; and they may, without becoming partners, agree among themselves as to the management

and use of the common property and the appliacation of the proceeds therefrom. [Houssels v. Jacobs, 178 Mo. 579, 77 S. W. 857.]

In the case of Norton v. Brink, 110 N. W. 669, the Supreme Court of Nebraska, in a similar case, said: "It will be observed that nothing is said in this contract about entering into a general or special partnership or that the purpose thereof was to sell the land for profit. Its language is: 'It was mutually agreed that said land should be purchased in partnership.' Buying land together does not make the purchasers partners, nor does the transaction constitute a partnership with its rights, duties, and obligations as defined by law. The appellant did nothing upon her part; contributed nothing, risked nothing, and there was no consideration to support the contract."

The case of Levy v. Brush, 45 N. Y. 589, is very similar to this case. In that case the defendant agreed to bid off in his own name a certain tract of land, and to furnish the necessary funds therefor, and the deed was to be taken in the name of both parties, and that plaintiff was to refund to the defendant one-half of the money so paid. The defendant purchased the property, took the deed in his own name, and refused to recognize plaintiff as the owner of a one-half interest therein. The court held that the agreement did not constitute the parties partners, and said: "The agreement was for the purchase only, the title to be taken in common. It is clear that such an agreement does not constitute a partnership."

The facts in this case do not attend as strongly as those appearing in Thompson v. Holden, supra, Mining Company v. Swope, supra, or Houssels v. Jacobs, supra, and it was held in those cases that no partnership existed. In our opinion the court erred in holding that the town lot was partnership property. When it is determined that it was not partnership property, then the agreement to deed to plaintiff one-half in-

terest in the property upon the payment by him to defendant of one-half of the purchase price, was clearly within the statute of frauds. [Clawater v. Tethrow, 27 Mo. 241; Norton v. Brink, 110 N. W. 668; Levy v. Brush, 45 N. Y. 589; McCoy v. McCoy, 69 N. E. 193, 102 Am. St. Rep. 223; Spencer v. Lawton, 14 R. I. 494; Gallagher v. Mars, 50 Cal. 23.]

In Levy v. Brush, supra, the New York court said: "But no case can be found where a contract has been taken out of the statute in favor of a party who had no existing interest in the property, who had done no act of part performance, who had parted with nothing under the contract, simply upon the ground that the other party was guilty of a fraud in refusing to perform his verbal agreement. That is all there is of this case, except the offer of performance by the plaintiff. To hold that to be sufficient, to take the case out of the statute, would repeal it. A party, in no legal sense, commits a fraud by refusing to perform a contract void by its provisions."

The appellant asks us to declare the original agreement in 1905 under which the parties purchased fees and bid in tax lands, void. This contention is based on the statute prohibiting clerks and officers from buying, purchasing or trading in fees at less than their face value. If the referee had found that the disputed tract in question was purchased under such partnership arrangement, we might give this question more consideration, but the referee found, and the evidence justified such finding, that such partnership arrangement ceased with the close of the year 1906, and at that time they held three tracts of land which they had purchased at tax sales, and that at said time the parties had a settlement and all previous transactions were adjusted, except there remained three tracts of land which the parties purchased at tax sales; that said tracts were afterwards sold by the parties, and there was a difference due the plaintiff

from the proceeds of such sales, in the sum of $56. The trial court rejected the report of the referee, allowing the plaintiff this sum.

If we admit that the original partnership contract to purchase fees was illegal, yet we have the admitted fact that the three tracts of land were bid in by the parties to this suit at sheriff's sale for taxes, and that each of the parties contributed one-half of the money therefor. The lands were subsequently sold, and the defendant received $56 more than he is entitled to. There is nothing to show that any money derived from the discounting of fees was used in payment for these lands.

In the United Shoe Mach. Co. v. Ramlose, 231 Mo. 508, 132 S. W. 1133, decided by our Supreme Court in June of last year, it is said: "From these cases it will be seen that this court has uniformly lent its aid to the protection of the rights of parties growing out of illegal and void contracts, wherever it could do so, without giving force and effect to the illegal contract itself."

The testimony discloses that the referee. has in his hands moneys paid to him by the plaintiff for rent of the building on the city lot pending this suit, in excess of the $56 defendant received from the sale of the tax lands in excess of his part, and we will reverse the judgment and remand the cause with directions to the court to allow plaintiff the said $56, and to authorize the referee to pay the same to plaintiff out of the money in his hands, and to render a judgment decreeing the title to the four acres and the 160-acre tract to the parties as tenants in common, and to said lot to the defendant, and to tax the costs as to the court may seem equitable and just. All concur.