PRIEST, *Appellant*, v. CHOUTEAU.

1. **Partnership.** Whether persons are partners as to each other may be determined by their intention, as the latter is expressed in the words of their contract, or may be gathered from the acts and circumstances attending such contract.

2. The rule applied and the relation of partnership held to exist between contracting parties.

3. **Partnership Debts:** REAL ESTATE OF FIRM. Real estate owned as partnership property is bound for all the debts of the firm, and for all advances made by any of the partners, as if it were personal property.

4. ———: ———. The accounts between the partners must be settled and all partnership debts must be paid before any creditor of an individual member of the firm can subject the firm property to the payment of this debt. And his rule applies where one partner

mortgages his interest in the real estate of the firm to secure his individual debt. The interest thus mortgaged will remain subject to the prior lien for partnership debts.

5. ——— : ———: INNOCENT PURCHASER. A purchaser or mortgagee from an individual partner of real estate belonging to the firm will be protected, if he received the conveyance without notice of the equitable rights of the firm in the premises.

6. The finding of the trial court that the mortgagee in this case was affected with such notice affirmed.

### *Appeal from St. Louis Court of Appeals.*

AFFIRMED.

### *A. J. P. Garesche* for appellant.

(1) There was no partnership between DeBar, Chouteau and Mrs. Wakefield. In this state a mere division of profits does not constitute a partnership. *McCauley v. Cleveland,* 21 Mo. 439; *Gwinn v. Rooker,* 24 Mo. 292; *Johnson v. Hoffman,* 53 Mo. 505; *Campbell v. Dent,* 54 Mo. 325; *Donnell v. Harshe,* 67 Mo. 173; *Musser v. Brink,* 68 Mo. 249. (2) Even if the partnership existed the leasehold was not partnership property. Except in the inventory by Mr. Chouteau it was always treated as property in common, not as partnership property. That property even bought for a partnership, and used for it, may nevertheless be held only as property in common, See *McDermott v. Lawrence,* 7 S. & R. 442; *Coles v. Coles,* 15 John. 160; *Forde v. Herron,* 4 Munf. 322; *Frink v. Branch,* 16 Conn. 270; *Polk v. Buchanan,* 5 Sneed, 721; *Webb v. Leggett,* 6 Mo. App. 347. And where, as in this case, the conveyances are to individual members, the property cannot by parol be converted into partnership property. *Hale v. Herne,* 2 Watts, 143; *Lancaster Bk. v. Higley,* 13 Pa. St. 550; *Otis v. Sill,* 8 Barb. 122; *Bird v. Morrison,* 12 Wis. 155. (3) Chouteau was not a competent witness. *Stanton v. Ryan,* 41 Mo. 510; *Johnson v. Quarles,* 46 Mo. 429; *Kellogg v. Malin,* 62 Mo. 432; *Angell v. Hester,* 64 Mo. 144. *Weiland v. Weiland,* 64

Mo. 169 ; *Sitton v. Shipp,* 65 Mo. 305 ; *Ring v. Jameson,* 66 Mo. 427. (4) But if the leasehold was partnership property, the plaintiff was an innocent purchaser. Kerr on Fraud and Mistake, 253–4. (5) DeBar having shared in the proceeds of the money raised by the deed of trust, his associates are estopped to contest the deed. *Lutzweiler v. Lachman,* 23 Mo. 168.

*Hermann & Reyburn* for respondent.

(1) The arrangements existing between DeBar, Chouteau and Mrs. Wakefield, constituted a partnership. Parsons on Part. (3 Ed.) 44, 50, 62 ; *Long v. Smith,* 48 Mo. 277 ; *Myers v. Field,* 37 Mo. 440 ; *Maclay v. Freeman,* 48 Mo. 234 ; *Bond v. Pittard,* 3 M. & W. 357 ; *Clagett v. Kilbourne,* 1 Black, 346. (2) The leasehold was partnership property. *Clagett v. Kilbourne,* 1 Black, 346 ; *Dupont v. McLaren,* 61 Mo. 508 ; *Acley v. Stahlin,* 56 Mo. 560 ; *Carlisle v. Mulhern,* 19 Mo. 56 ; *Divine v. Mitchum,* 4 B. Monroe, 488 ; *Hewitt v. Sturdevant,* 4 B. Monroe, 453 ; *Winslow v. Chiffele,* 1 Harper's Eq. 25 ; *Duryea v. Burt,* 28 Cal. 569 ; *Matlock v. James,* 13 N. J. 126 ; *Dyer v. Clark,* 5 Met. 562 ; *Burnside v. Merrick,* 4 Met. 537. (3) The defendant was a competent witness.

EWING, C.—Plaintiff commenced an action of ejectment in the circuit court of St. Louis against the defendant to recover possession of the undivided half of a leasehold estate in the property known as "Debar's Grand Opera House." The answer sets up that on the fifteenth of June, 1877, and prior thereto defendant, Ben DeBar, and Alice Wakefield, through her trustee, Taylor, were partners under the style of "DeBar's Grand Opera House," engaged in the business of running and managing a theatre on the premises, which was partnership property and used as such. That they were interested in said property and business as follows : DeBar one-half, defendant one-sixth, and Alice Wakefield one-third. That on the

fifteenth of June, 1877, DeBar gave a deed of trust on his undivided half to secure a debt due by DeBar individually to John G. Priest; and plaintiff claims under a deed from the trustee, by virtue of a sale under this deed of trust. That on August 26, 1877, DeBar died, and defendant, by request of Priest and Mrs. Wakefield, and under an order of the probate court, was appointed as administrator of the partnership effects as surviving partner; that, as such, by order of court, he sold the interest of DeBar in the opera house; that one Jno. W. Norton became the purchaser, and to whom the possession was delivered. That the entire partnership property was insufficient to pay the debts of the firm. That Jno. G. Priest, on the fifteenth of June, 1877, and plaintiff, Frederick R. Priest, had notice of the fact that said leasehold was partnership property belonging to and used by said firm in the prosecution of their business.

Both parties claim through Ben DeBar. The property was a leasehold, the term expiring on the first day of January, 1882, and was the property known as the "Grand Opera House," in the city of St. Louis. On the thirteenth of May, 1873, DeBar acquired this leasehold from Truman Martin and wife, and on the twenty-third day of May, 1873, a contract was entered into between DeBar and the trustee of Alice L. Wakefield, she being a married woman, by which said Alice was to acquire a one-third interest in said theatre property and its profits. The agreement is in the following words: "This memoranda of agreement made and entered into this twenty-third day of May, A. D. 1873, by and between Benedict DeBar and Daniel G. Taylor, trustee for Mrs. Alice Wakefield, witnesseth: That in consideration of three thousand, three hundred and thirty-three dollars and thirty-three cents in cash paid, and the payment of the additional sum of ten thousand dollars, for which a promissory note has this day been given, it is agreed by Ben DeBar that said Daniel G. Taylor, as such trustee, shall have one-third of all the profits derived from the

Grand Opera House property on Market street, the same to be managed and controlled by said Ben DeBar as exclusively as though owned by him during the continuance of the leasehold estate purchased by said Ben DeBar from Truman Martin and wife; all profits to be accounted for by said Ben DeBar on the first day of each month; and the one-third of the profits of the previous month, *less twenty-five per cent. to be reserved to meet any losses that may occur, to be paid to said Taylor, as such trustee; such twenty-five per cent. so reserved to be carried to the account of the next month following;* and when the said note of ten thousand dollars is paid according to the tenor thereof, then a one-third of the building and property mentioned and referred to shall be by deed conveyed to said Daniel G. Taylor, as such trustee; but the management of said premises shall continue in like manner as herein set forth, and in the event that said note for ten thousand dollars is not paid when due, the title to said property to fully remain in said DeBar, released from all claim and interest of said Taylor, as such trustee, and until the payment of said note the profits to be retained by said DeBar to be applied upon said note; and in the event of a failure to pay said note when due, one-half of the $3,333.33⅓ this day paid shall be repaid to said Taylor as such trustee, and the balance shall be, with all interest of said Taylor as such trustee hereunder, forfeited to said Ben DeBar and forever terminated.

"BEN. DEBAR,    [L. S.]
"DAN'L G. TAYLOR,  [L. S.]
"Trustee of Alice L. Wakefield, [L. S.]"

The deferred payments mentioned in the agreement were paid out of the profits of the theater, and a deed was executed to the trustee of the said Alice on or about the twenty-sixth of April, 1875, conveying said one-third interest. Another deed covering the same purchase was made between these parties, dated December 13, 1873. Both deeds convey this same interest, *subject to the provisions of said agreement;* and in both deeds *John G.*

*Priest* executes the conveyance *as attorney in fact of Harriet,* the wife of Ben DeBar. Both deeds were duly recorded; the former on the thirtieth of April, 1875, the latter on December 15, 1873.

By deed dated December 15, 1873, DeBar and wife conveyed to Charles P. Chouteau, defendant in this action, an undivided one-sixth interest in the same property; the deed contains the following provision: "This conveyance, however, being subject to the terms and conditions of a certain contract made between the parties hereto on the twenty-third day of May, 1873, which contract is in its terms and provisions similar to a certain other contract of same date between Benedict DeBar and Daniel G. Taylor, trustee of Alice Wakefield." This deed, too, is executed by John G. Priest, as attorney in fact, of Harriet DeBar, on the nineteenth day of September, 1873, and is duly recorded. "That Ben DeBar, D. G. Taylor, as trustee of Mrs. Alice B. Wakefield, and Charles P. Chouteau, in the month of May, A. D. 1873, each acquired an undivided interest in the leasehold premises in controversy herein, said interests being respectively one-half, one-third, and one-sixth, and that said leasehold consisted of a theatre building and all the furniture, scenery and properties therein contained. That said building, furniture, etc., was acquired, as aforesaid, for the express purpose of being operated as a theatre, by the parties above named, for their mutual benefit and profit, under the management of Ben DeBar; and the same was so operated from May, 1873, until August, 1877, when said DeBar died. That said business, during the period last specified, by agreement of said parties, was conducted by said parties in the following manner: Books of account were kept by Ben DeBar in the name of 'DeBar's Grand Opera House,' wherein were entered all the receipts and expenses of the business conducted therein, including the ground-rent of said leasehold; and at the end of each theatrical season the net profits were divided among the three

partners above named in the proportions of one-half, one-third, and one-sixth; but that at the end of each year twenty-five per cent. of the net profits accruing to each party, as aforesaid, were set apart and carried forward to the account for the succeeding year for the purpose of meeting any loss that might be sustained during such season.    Transcripts of such accounts were furnished each year by said DeBar to Taylor, trustee, and Chouteau, and said books of account were frequently examined in behalf of Mrs. Wakefield, and occasionally by Chouteau. A bank account in the name of 'DeBar's Grand Opera House,' was also kept, separate and apart from the individual account of Ben DeBar, and the moneys realized from said business were deposited to the credit of such account, and the expenses paid therefrom.    So far as Mrs. Alice L. Wakefield was concerned there was no agreement exempting her from losses incurred in the business, but as between DeBar and Chouteau there was an oral agreement exempting the latter from losses beyond the amount of twenty-five per cent. of the net profits set apart as a reserve fund at the close of each year's business." That by consent of the parties above named debts were also contracted in the name of DeBar's Opera House, during the continuance and in the prosecution of said business.    That after the death of Ben DeBar, by mutual consent of Alice L. Wakefield, Charles P. Chouteau, and the personal representative of Ben DeBar, the defendant in this action qualified as administrator of the firm, or association of persons transacting business, as aforesaid, and as such surviving partner, took possession of the entire leasehold, premises and property aforesaid, as forming part of the partnership assets, and sold the same in that character under an order of the probate court, prior to the institution of this suit, at which sale John W. Norton became the purchaser.    There were no instructions asked or given.

The circuit court found for the defendant, holding, as a matter of law, under the facts, that DeBar, Mrs.

Wakefield, and Chouteau were partners in the theatrical business, and the leasehold was partnership property. That at the time plaintiff purchased at the trustee's sale in 1879 he knew defendant held possession of the leasehold as surviving partner; and that it had been inventoried as partnership property. From this judgment the plaintiff appealed to the court of appeals at St. Louis. That court affirmed the judgment of the circuit court, and plaintiff comes here by appeal.

I.    The first and vital question in the case is as to the partnership. Under the facts, were DeBar, Mrs. Wakefield, through her trustee, and Chouteau partners? No general rule can be laid down which will determine the question of partnership in every case. Each case must, in great measure, be governed by the facts and circumstances surrounding it. *Donnell v. Harshe*, 67 Mo. 170. It is held in this state that a mere division of profits does not necessarily constitute the parties partners. *McCauley v. Cleveland*, 21 Mo. 439; *Campbell v. Dent*, 54 Mo. 325; *Donnell v. Harshe*, 67 Mo. 170. In Parsons on Partnership it is said: "And although it is undoubtedly true that in much the greater number of partnerships there is a community of loss as well as of profits, the weight of authority, as well as of reason, seems to be decidedly in favor of the rule that there may be a legal and valid partnership, although one or more of the partners are guaranteed by the others against loss. It would seem there must be a community of interest for business purposes." Pars. on Part. 41. In *Maclay v. Williams*, 48 Mo. 234, it was said: "An agreement that something shall be done or attempted with a view to gain, and that the gain shall be shared by the parties to the agreement, is the essential characteristic of every partnership, and is the leading feature in every definition of the term." In *Pleasants v. Fant*, 22 Wall. 120, it is held that one of the approved *criteria* of the existence of a partnership is the right to compel an account of the profits in equity. In Parsons on Partnership, page fifty-eight, it is said:

"It should be added, that whether two or more persons are partners *as to each other*, must generally, and perhaps always, be determined by the intention of the parties, as the same is expressed in the words of their contract, or may be gathered *from the facts, and from all the circumstances* which are available for the interpretation or construction of the contract."

In the case at bar it very clearly appears that the parties, Chouteau and Mrs. Wakefield, purchased their respective interests in the leasehold for the sole purpose and intention of carrying on the business of a theatre. The deeds they received, and the agreements entered into unquestionably indicate this. After the business was entered into it was carried on in the name of "DeBar's Grand Opera House;" a special account in bank was opened in that name, and debts contracted in that name. The deed and agreement entered into between DeBar and Mrs. Wakefield leave no doubt of the intention of those parties and show their community of interest; and the deed to Chouteau clearly comprehends just such conditions as had been imposed on Mrs. Wakefield, and leaves, to my mind, the situation equally clear as to DeBar and Chouteau. The acts of the parties in writing, and otherwise, the transaction of all the business, and the circumstances surrounding the whole case, lead to the inevitable conclusion that they were partners, made so by operation of law, upon their own acts.

II. The next question is, was the leasehold partnership property? It is now considered as settled law that when real estate is partnership property, it is bound for all the debts of the concern, and for all advances made by any of the partners, as though it were personal property. The accounts must be settled between the partners, and all partnership debts must be paid, before any creditor of an individual member of the firm, or his heir or representative can take. In *Duryea v. Burt*, 28 Cal. 569, it is said: "If two or more persons acquire a mining claim for the purpose of working the same, * * *

and actually engage in the enterprise, and share, according to the interest of each, the profit and loss, the partnership relation subsists between them, though there is no express agreement between them to become partners, or to share the profits and losses. The mining ground belonging to and worked by a mining partnership and acquired for mining purposes, *whether purchased with partnership funds or brought into the concern by individual members as a portion of the capital stock, is, in equity, for the purpose of a settlement of the partnership affairs, to be treated as partnership property*. Each member of a mining partnership has a lien upon the partnership property for the debts due the creditors of the concern, and for money advanced by him for its use, which he may enforce in equity, *even if there has been no agreement among the partners that such lien exists*." The same rule is approved in *Divine v. Mitchum*, 4 B. Mon. 488; *Winslow v. Chiffelle*, Harper's Eq. 25; *Carlisle's Adm'r v. Mulhern*, 19 Mo. 57. And this rule is not varied, even though one partner shall mortgage his interest to secure an individual debt. The interest thus mortgaged would remain subject to the prior lien for partnership debts.

In *Rossum v. Sinker*, Supreme Court of Indiana, reported in 12 Central Law Journal, 202, it is said: "The rule unquestionably is, that the heirs of a deceased partner have no interest in the real estate owned by the firm until all the partnership debts have been paid. Until all debts have been paid, the surviving partner has the real, substantive interest. * * * Certain it is, however, that the land of a partnership is, in many very essential respects, radically and materially different from land owned by an individual. It is also certain that the surviving partner has the substantive interest in such property, and, unquestionably, the right to own, hold and sell it for the purpose of settling up firm affairs and paying firm debts." See authorities cited in that case. See, also, *Burnside v. Merrick*, 4 Metc. 537; *Dyer v.*

*Clark*, 5 Metc. 562. In *Jones v. Parsons*, 25 Cal. 104, it is said: "The same result would accrue in case of the sale under execution of the legal interest of a partner, in the partnership real estate, as in the personal property. The partners are regarded at law as tenants in common, but in equity the property is treated as vesting in them in their partnership capacity, the beneficial interest being held by them in trust until the partnership account is settled and the partnership debts are paid." From what has been said we are led to the conclusion that this leasehold was partnership assets properly in the hands of the surviving partner, and subject first to the debts of the concern.

III. It seems to be the recognized doctrine that an innocent purchaser or mortgagee, from an individual partner, of real estate belonging to the partnership, would be protected unless he had notice of the equitable rights of the firm in the premises. In *Matlock v. James*, 13 N. J. Eq. 126, it is said: "One partner cannot convey to a creditor of his own, so as to give him a preference over the creditors of the firm, his undivided interest in the real estate belonging to the firm, *although the title to such property stands in the individual names of the partners, such grantee having notice of the equitable rights of the firm in the premises.*" The question of notice was the turning point, also, in *Forde v. Herron*, 4 Munf. 316, and the doctrine recognized in *McDermot v. Laurence*, 7 S. & R. 438. In *Frink v. Branch*, 16 Conn. 260, it was held that if the property mortgaged was partnership property and the mortgagee had actual or constructive notice of that fact, the solvent partners would have a lien upon it for the payment of debts due by the partnership.

The fact of notice would seem to be conclusive. The circuit court, to which the questions of fact were submitted, so found, with all the evidence before it, and that finding would not be overturned, unless the evidence would most clearly lead to a different conclusion. But

we have examined the evidence and must say the finding of the circuit court is the conclusion to which the evidence most strongly leads. The *cestui que trust*, Jno. G. Priest, as attorney in fact, for Mrs. DeBar, signed the deed from DeBar and wife to Mrs. Wakefield, in which is embodied the agreement in writing, which is the foundation of the partnership. The evidence also strongly tends to prove that he was the confidential friend of DeBar for years, and had knowledge of the condition of his business. The plaintiff, Frederick R. Priest, when he became the purchaser under the deed of trust, must have known that the defendant was in possession of the opera house as the surviving partner, and had been as such carrying on the business. The leasehold had been inventoried as partnership property. His suit was commenced on the day of the sale to the purchaser, Norton, by the surviving partner, Chouteau; and from all the facts and circumstances the conclusion is irresistible that the plaintiff had notice of the claim that the opera house was partnership property, and cannot, therefore, be protected as an innocent purchaser without notice.

IV. It is insisted by the appellant that the circuit court erred in admitting the testimony of Chouteau, as in violation of that section of the statute which provides that when one of the original parties to the contract is dead, etc., the other party shall not be permitted to testify. This question has been repeatedly passed upon by this court, but we consider it immaterial in the decision of the case at bar. There may be some question as to the competency of some of the statements of the witness, Chouteau; on this, however, we do not pass. But much of his testimony was clearly admissible. In the absence of other proof, the fact that the deed from DeBar and wife was on record and was offered in evidence and read without objection, would show *prima facie* that it had been executed and delivered. The reference in this deed, to-wit: "This conveyance, however, being subject to the terms and conditions of a certain contract made between

the parties hereto on the twenty-third day of May, 1873, which contract is in its terms and provisions similar to a certain other contract of *same date* between Benedict De-Bar and Daniel G. Taylor, trustee of A. L. Wakefield," must fix the terms of the contract between DeBar and Chouteau. It will be observed that these contracts referred to were made on the same date; and the reference thereto in the deed would be as effectual to determine the rights of parties and the purposes of the conveyances as though it had been incorporated into the deed in full. The reference pointed out the way by which the true intent and meaning could be ascertained, and would be binding upon all parties having either actual or constructive notice of the deed. Under this view of the case Chouteau's evidence in relation to this deed and the contract referred to is wholly immaterial, and even if it was error to admit it, that could not change the result of the finding upon that point, and is not cause for a reversal of the case.

V.  We do not consider that there is anything in the question of estoppel. The tendency of the evidence is, we think, very clear that the deed of trust by DeBar on his undivided half of the leasehold was made of his own motion, to secure his individual indebtedness, and not in pursuance of the authority given him to pledge the credit of "DeBar's Grand Opera House" for the purpose of carrying on the business. The evidence tends to show that "DeBar was to use the income of the concern and pledge its credit to carry it on;" again, because De-Bar was embarrassed, "he was to.pledge the credit of DeBar's Opera House. That he could go on and contract bills in the name of the opera house. Previously, under his written agreement, he could not have done so." Now it is very evident that it was not under this license—under this permission to pledge the credit of the opera house—that DeBar executed the deed of trust to secure Jno. G. Priest. That was evidently an individual transaction. On the other hand, it was doubtless under the authority

The State to use v. The St. Louis Brokerage Company.

to pledge the credit of the opera house, that he contracted the various debts which the evidence shows this partnership bound for.

The judgment of the court of appeals is affirmed. All concur, except Henry, C. J., absent.