JOHN S. McGUIRE, APPELLANT, v. FRANK C. HUTCHISON, ET AL., RESPONDENTS.—201 S. W. 2d 322.

Kansas City Court of Appeals. Opinion delivered March 1, 1948.

*Edmund H. McVey, William E. Kemp* and *J. R. Clagett* for appellant.

506

*Nelson E. Johnson* for respondents, Frank C. Hutchison and C. Earl Hovey, trustee.

508

SPERRY, C.—This is a suit in equity. Plaintiff, John S. McGuire seeks to have the business relationship existing between himself and defendant, Frank C. Hutchison, defined and terminated, and their respective rights in and to certain letters patent, the legal title to which had been assigned to defendant, Hovey, as trustee, partitioned. Defendant Fairfax Engineering Company was the licensee of said patents. The trial court found for defendants on plaintiff's petition, holding that the assignments to Hovey constituted a valid and binding trust, and rendered separate money judgments for defendant Hovey on his counterclaim as against both McGuire and Hutchison, in the amounts, respectively, of $825, and $425. From this judgment plaintiff appealed to the Supreme Court. That court has transferred the cause to us on jurisdictional grounds, 201 S. W. 2d, 332. .

The evidence discloses that McGuire is a university graduate, having majored in science, and that Hutchison is a graduate of Massachusetts Institute of Technology; that they became acquainted about 1934 and developed a mutual respect and friendship; that, in 1939 McGuire conceived a patentable idea and device for the repairing of pipelines without interruption of service; that he confided in Hutchison, who lent substantial assistance in developing and perfecting the device, which was patented by McGuire under No. 334739; that, during 1940, Hutchison conceived a patentable idea and apparatus for contouring the ends of tubular stock; that McGuire materially aided in improving said apparatus, which was later patented under Numbers 371367 and 442048; that they consulted defendant Hovey, who is a lawyer specializing in U. S. patent practice and, for business reasons, the latter device was also patented in the name of McGuire; that McGuire was the manager and principal stockholder of Fairfax Engineering Company; that he and Hutchison discussed the desirability of becoming associated together as co-employees of said company in order that they might develop further patents and work together; that on May 4, 1942, they entered into a memorandum contract whereby it was agreed that Hutchison should resign his position with Linde Air Products Corporation and become an employee of Fairfax Engineering Company; that, by the terms of said contract, McGuire was to cause (and later did cause) one half of the stock of said company to be transferred to Hutchison, himself retaining the other half; that, on June 1, 1942, a contract of employment was entered into between Fairfax Engineering Company and Hutchison; that on July 14, 1942, McGuire assigned to Hovey, as trustee, all rights to the above described patents, which assignment was duly registered in the U. S.

Patent office; that on August 1, 1942, the following agreement was entered into:

" THIS AGREEMENT made and entered into this 1st day of August, 1942, by and between C. Earl Hovey of Kansas City, Missouri, Party of the First Part, hereinafter designated 'trustee'; and JOHN S. McGUIRE and FRANK C. HUTCHISON, of Kansas City, Kansas and Merriam, Kansas, respectively, Parties of the Second Part, hereinafter designated 'Beneficiaries';

" WITNESSETH THAT:

" WHEREAS, the Trustee is now holder of the entire right, title and interest in and to the following identified inventions, applications for U. S. Letters Patent covering the same, and the U. S. Letters Patent maturing from said applications:

" 
| Serial No. | Filed | Title |
|---|---|---|
| 334,739 | May 13, 1940 | Repair Parts for Pipe Lines |
| 371,367 | Dec. 23, 1940 | Apparatus for Contouring the Ends of Tubular Stock. |
| 442,048 | May 7, 1942 | Apparatus for Contouring the Ends of Tubular Stock. |

and,

" WHEREAS, the Beneficiaries are the actual beneficial owners of said inventions, applications for U. S. Letters Patent, and any U. S. and/or foreign Letters Patent covering said inventions in the proportions indicated as follows:

" 
| Beneficiary | Percentage of Total Interest |
|---|---|
| John S. McGuire | 50% |
| Frank C. Hutchison | 50% |

" NOW, THEREFORE, in consideration of the benefits arising from the covenants herein contained, it is hereby agreed and declared as follows:

"1. The beneficiaries hereby agree between themselves and with the Trustee that C. Earl Hovey shall hereafter be the duly qualified and recognized holder, in trust of the entire, right, title and interest in and to the above identified inventions, applications for U. S. Letters Patent, and U. S. Letters Patent arising therefrom, together with any U. S. or foreign applications and/or Letters Patent covering said inventions that may hereafter be assigned to him as Trustee, for the use and benefit of said Beneficiaries in the above percentages.

"2. The Trustee shall hold the legal title to said inventions; applications for Letters Patent, and Letters Patent maturing therefrom, and all interest and rights therein in trust for the benefit of the Beneficiaries subject to the limitations, restrictions and powers herein set forth. Said legal title in toto shall remain

vested in said Trustee to the end of the period for which the Letters Patent covering the inventions forming the subject matter hereof, shall be issued, or until sooner terminated as hereinafter provided.

"3. The Trustee hereby binds himself and his successor in trust, who may hereafter accept the trusteeship for the Beneficiaries, to do as requested in writing, whatever the Beneficiaries may hereafter direct him to do in the following respects, to-wit:

" (a) Execute licenses, and/or royalty agreements, granting the right to make, use and/or sell machines embodying the above mentioned inventions forming the subject matter of said applications, to such person, firm or corporation as may be designated in said request.

" (b) Sell, assign, transfer and set over any or all of the above mentioned inventions, applications covering the same, licenses or royalty agreements to such person, firm or corporation as may be designated in said request.

" (c) Collect and receive any and all moneys due under any licenses or royalty agreements, or from the sale of the inventions, the applications covering the same or arising in any manner out of said inventions, applications or the patent rights maturing therefrom, except as provided in paragraph (d).

" (d) Instruct any licensee to make remittances directly to the Beneficiaries, their successors, heirs or assigns, in the proper proportions.

" (e) Render to the Beneficiaries, their successors, heirs or assigns, an accounting, and in any event to render an accounting at least quarterly, at which time he shall distribute any moneys held for the beneficiaries to the then Beneficiaries in the proper proportions.

" (f) Institute and prosecute suits for the infringement of rights under the Letters Patent maturing from said applications, and breaches of licenses or royalty agreements, or either of them. The Beneficiaries hereby agree to pay the costs of such litigation, and to save, defend and keep harmless the Trustee from any expense, loss or damage incurred in any suits instituted as Trustee.

" (g) Assign, transfer and set over unto any successor in trust all his rights, title and interest in and to any rights, patents, applications, licenses or royalty agreements.

"4. The Trustee shall receive as his entire compensation for services hereby required of him as Trustee for the Beneficiaries, the sum of Fifty ($50.00) Dollars per month, payable to the Trustee before the tenth (10th) day of each calendar month for the month next preceding.

"5. In the event of the death, misconduct, refusal or failure to act of said Trustee, the Beneficiaries shall appoint a new Trustee, who shall succeed to all the rights, titles and benefits of the said First Party.

"6. This agreement may be terminated at any time upon written notice of the Trustee from the Beneficiaries and he shall thereupon assign, transfer and set over unto the Beneficiaries in the proportions to which they shall then be entitled, or to such persons as they may designate, all of the right, title and interest in and to the said inventions, applications for Letters Patent, and any Letters Patent arising from the applications, licenses and royalty agreements, and he shall in like manner. distribute the moneys and accounts remaining in his hands.

"7. The term 'Trustee' shall include the above named Trustee and any successors, and the term 'Beneficiaries' shall include those above mentioned, their successors, heirs or assigns, and any subsequent owner, assignee or transferee in the beneficial interest in the trust above set forth.

" WITNESS our signatures the day and year above written."

Upon instructions of McGuire and Hutchison, Hovey licensed these patents to Fairfax Engineering Company, on August 1, 1942, but, because of lack of materials for manufacture, and other conditions caused by war, no device or apparati were ever produced under the patents, and no royalties have ever been paid on account thereof. Hovey, for a time, billed Fairfax Engineering Company for his trustee fees at the rate of $50 per month and, later, began billing McGuire and Hutchison, each, for $25 per month. The evidence discloses that, if McGuire and Hutchison are personally liable for payment of the fees as provided in the "Trust" agreement, then at the time the judgment was rendered, they each owed Hovey the amount found and adjudged by the court.

The evidence discloses that Hovey has never performed any act, under the "Trust" agreement, except such as was directed by McGuire and Hutchison.

The evidence is to the effect that, within a short time after the execution of the "Trust" agreement, differences of opinion arose between McGuire and Hutchison as to the conduct of the business of Fairfax Engineering Company and, on July 8, 1943, they entered into a written contract whereby each released the other from all claims, demands and liabilities "except only the rights and interests of the parties hereto under the certain "Trust" agreement of date August 1, 1942, and supplements thereto * *." Pursuant to said contract Hutchison terminated his employment contract with Fairfax Engineering Company and surrendered to it all stock therein held by him and it released to him certain property. Shortly thereafter Hutchison accepted a full time position with Massachusetts Institute

of Technology and moved to Massachusetts where he now resides. There has been no further communication between the parties nor have they instructed Hovey to do anything regarding the patents. Neither McGuire nor Hutchison made any improvement to the devices since the execution of the "Trust" agreement and both agree that they will not, in future, work together in harmony. Hutchison valued the patents at $10,000, for each device, or a total of $20,000, and is unwilling to have the agreement terminated and the patent rights on the pipeline device transferred to McGuire, and those on the apparatus for contouring tubular stock transferred to him, as requested in the petition, as *amended*. Apparently, he desires that the situation remain in status quo until such time as he and McGuire reach some agreement as to their course of action.

Plaintiff contends that the "Trust" agreement was terminated by the agreement of July 8, 1943; and that it is not a trust but is a partnership which should be dissolved and the assets either distributed to the respective partners or that they should be liquidated and the proceeds distributed to the two partners.

By the agreement of July 8, 1943, the parties " * * * forever release and discharge the other party hereto from any and all claims, demands, actions and liabilities of any and every kind and nature whatsoever, except only the rights and interests of the parties hereto under the certain trust agreement of date August 1, 1942 and supplements thereto." Whatever relationship may have existed between these parties as a result of their contracts, association and conduct, except that created by the August 1st contract, was thereby terminated. But whatever relationship which existed because of the August 1st contract was not terminated and such relationship continues to exist. The trial court, in effect, so held and we approve thereof.

Plaintiff contends that the law of Kansas should determine the issues in this case because both McGuire and Hutchison resided in the state of Kansas at the time the instrument was executed and intended that the contract be carried out in that state, which was the domicile of Fairfax Engineering Company, where they were employed. The contract was made and executed by all the parties at the office of a Missouri lawyer, located in Missouri. If, as is claimed by plaintiff, Hovey was not the trustee of an express trust but was merely the agent of McGuire and Hutchison, who were partners, then they appointed a Missouri citizen as their agent, to act as such within the limits of the authority set forth in the instrument whereby the agency was created. His authority and duty to act was not confined to the territorial limits of Kansas. He would be expected to perform his duties, either as trustee or agent, from his office, or in whatever state such duties might call him.

Among the duties delegated to Hovey, were the following: To hold the title to patents, to issue licenses for their use, to collect royalties,

to make reports to beneficiaries, and to bring suit for infringement. He was not required to perform these duties in Kansas alone but was required to perform them wherever and whenever required. Since the instrument was executed in Missouri, between citizens of Kansas and a citizen of Missouri, in the latter's office and place of business where the same parties, according to the evidence of record, had transacted much other business between them; and since the duties therein to be performed by the trustee were such as might be performed in Missouri, as well as elsewhere, we cannot hold this to be a Kansas contract, subject only to the Kansas law governing such contracts. Roselle v. Farmers' Bank, 141 Mo. 36, l. c. 41; Ruhe v. Buck, 124 Mo. 178, l. c. 183.

The gist of plaintiff's contention is that the agreement of August 1, 1942, did not create a trust but created a partnership between McGuire and Hutchison with Hovey as their agent. In ruling this point it must be borne in mind that this is not a suit by a third party against one or more members of an alleged partnership. In such cases the doctrine of estoppel may play an important part. Darling v. Buddy, 318 Mo. 784, l. c. 795.

In National Bank of Commerce v. Francis, 296 Mo. 169, l. c. 193, the court quoted with approval the rule declared in Fuel Company v. Brady, 202 Mo. App. 551, l. c. 556, as follows:

" Persons cannot become partners, except by agreement, express or implied. The particular test as to the existence of the partnership relation, which is most widely accepted today, and which is applicable, *especially as between the parties themselves,* irrespective of the rights of third parties, is that a partnership is formed and exists only when it was the intention of the parties that they should be partners. Partnership contracts, like other contracts, are governed *by the intention of the parties.*" (Emphasis ours).

In Fuel Company v. Brady, supra, l. c. 556, the court said:

" Whatever may be the obligations and incidents resulting from a partnership such as sharing profits and losses, mutual agency, community of interests, etc., the formation of a partnership is by contract; and as in the case of all contracts, the cardinal rule for interpreting the contract and determining whether it constitutes a partnership or not is the intention of the parties. 'In practically all definitions of partnership the element of contract is fundamental. It is one of the chief characteristics of the partnership relation that it is created only by the voluntary contract of the parties, and that it does not arise in any case by operation of law. Persons cannot become partners except by agreement, expressed or implied'. (20 R. C. L., sec. 4, 802)"

514

In Prasse v. Prasse, 77 S. W. 2d, 1001, l. c. 1005, the Supreme Court said:

" The controlling intention is the legal intention deducible from the acts of the parties, and, if they intended to do a thing which in law constitutes a partnership, they are partners nolens volens. 47 C. J. 654, par. 47G; Green v. Whaley, 271 Mo. 636, 197 S. W. 355; Jones v. Stever, 154 Mo. App. loc. cit. 644, 136 S. W. 16. *This mutual intent may be manifested by the terms of the agreement, by the conduct of the parties to each other under it, or by the circumstances surrounding the transaction.* 20 R. C. L., p. 831, par. 36; Neville v. D'Oench, 327 Mo. 34, 34 S. W. (2d) 491." (Emphasis ours).

We find nothing in the contract of August 1st, indicating that the parties intended to establish a partnership. The words "partner" and "partnership" do not appear therein. While the use of such words is not essential to the creation of a partnership relation between parties, yet their presence or absence in a written agreement may throw some light on the intention of the parties as disclosed by the entire contract. It has been held that a written instrument that does not purport to be partnership articles is not admissible to prove a partnership but only as the basis for an inference of partnership. 47 C. J. 720, par. 125b.

It was specifically provided in the contract that only Hovey may convey title or interest whatsoever in or to the property which is the subject of the contract. Such a provision negatives the existence of a partnership relation. In Prasse v. Prasse, supra, it was said:

" To the foregoing, we add that fundamentally, to constitute a partnership, 'there *must be such a community of interest as impowers each party to make contracts, incur liabilities, manage the whole business and dispose of the whole property,* a right which, upon the dissolution of the partnership by death of one, passes to the survivor, and not to the representatives of the deceased.' Musser v. Brink, 68 Mo. 242, 249." (Emphasis ours).

In 40 Am. Jur. page 154, par. 41, it is stated:

" As has been said, community of interest is the basis of the partnership relation. Hence, in order to constitute a partnership, there must be such community of interest as enables each party to *make contracts, manage the business and dispose of the whole property.*" (Emphasis ours).

This contract cannot be said to establish a partnership.

The conduct of McGuire and Hutchison, under the contract, does not aid a finding of partnership. The patents were licensed to Fairfax Engineering Company and compensation was paid to Hovey for his services. These acts are not especially indicative of a partnership relation since they were performed under and according to the terms

of the agreement, whether the agreement created a partnership or a trust.

The circumstances surrounding the execution of the instrument do not indicate an intention to create a partnership. The evidence is to the effect that McGuire and Hutchison sought the advice of Hovey, a lawyer specializing in U. S. patent practice. He advised them that under the U. S. patent laws, if two or more held title to letters patent, and to the rights thereunder, then either could sell or assign the entire right to use the patent and the other was without remedy. See Talbott v. Quaker State Oil Refining Company, 104 Fed. 2d, 967, l. c. 968. Hovey advised the execution of this instrument, whereby both parties were divested of power to license the patent rights in any degree whatever. Its execution, in view of such advice, is evidence of the fact that the parties desire to divest each other of such power; but if the contract constitutes a partnership, then it is doubtful if their real purpose in entering into it was accomplished.

In view of the facts and circumstances of record in this case, and of the law concerning partnerships, we must hold that the contract of August 1, 1942, did not create a partnership relation between McGuire and Hutchison.

In McDuffee v. Hestonville, N. & F. Pass. Ry. Co., 162 Fed. 36, l. c. 39, (certiorari to Supreme Court was denied, 223 U. S. 719) it was said:

"It will therefore be seen that, to preserve their joint property and prevent its practical destruction by co-owners, it is imperative that all should be permitted to simply vest the legal title in one without imposing any active duties on such holding trustee, and this shows that, while there are no express duties for the trustee to perform, it by no means follows the trust is a dry or inactive one. As holder of the legal title he can bring suit, enjoin infringers from destroying the patent, and the mere holding of the legal title in trust per se preserves the patent for the common good and prevents its destruction by each co-owner."

See also Talbott v. Quaker State Oil Refining Company, supra. This case was pleaded, tried, submitted and decided on the issue of whether the contract of August 1, 1942, created a trust, as claimed by defendants and as held by the trial court, or a partnership, as contended by plaintiff. The trial court correctly ruled that it created a trust.

Plaintiff contends that, if this is a trust, the trial court's separate money judgments in favor of Hovey and against McGuire and Hutchison cannot stand. He cites 65 C. J. 917, Sec. 816; Annotation 117 A. L. R. 1154; Estey v. Commerce Trust Company, 333 Mo. 977, 64 S. W. 2d, 608, as authority for the proposition that the fees of a trustee must come from the income and not the corpus, except in rare instances. However, Hovey points to the fact that there was evidence to

the effect that, at the time the trust was created, he advised McGuire and Hutchison that each should personally pay half of the monthly compensation provided in the contract. Mr. Hovey did so testify and such testimony was not contradicted. Hovey also testified to the effect that each of the beneficiaries paid the trustee's fees, as individuals, for a number of months after the agreement was made. Neither McGuire nor Hutchison denied the latter testimony. This court has recently held that such statements and conduct amount to an offer and acceptance, and constitute a valid and binding contract. Jacob Dold Packing Plant v. General Box Company, 194 S. W. 2d, 55, l. c. 58. See also 12 Am. Jur. 518, par. 22. Hovey's acceptance of service as trustee, and performance of the duties prescribed in the "Trust" agreement, constitutes consideration to support the agreement on the part of McGuire and Hutchison to pay for said services.

However, plaintiff contends that the contract thus attempted to be made falls within the provisions of Section 3354, R. S. Mo. 1939, commonly known as the Statute of Frauds, because not to be performed within one year, and is thereby invalid. In Carlin v. Bacon, 322 Mo. 435, 16 S. W. 2d, 46, l. c. 48, the court quoted, with approval, the following:

"An agreement which may, perchance, be performed within a year from its date, consistently with its terms and not in violation of them, is not within the statute although the performance is liable to occupy more than a year; such as a contract to support one for life, or during an indefinite period, or to work for another for life or for an indefinite period, or to do any other thing possible to be done within a year although the doing of it may continue, and may be expected to continue longer. Biest v. Versteeg Shoe Co., 97 Mo. App. 137, 149, S. W. 1081, 1085, and cases cited."

It is said to be the general rule that if there is a possibility of performance within a year, an oral contract is not barred by the statute of frauds. 49 Am. Jur. 385, 386, par. 25. McGuire and Hutchison had it within their power to make possible full performance of this contract, with Hovey, within one year. They could have terminated the trust at any time; and they can now do so.

The judgment should be affirmed. *Boyer, C.,* concurs.

PER CURIAM:—The foregoing opinion of SPERRY, C., is adopted as the opinion of the court. The judgment is affirmed. All concur.